551 S.E.2d 702

### Paula TAYLOR–HURLEY, Petitioner Below, Appellee

v.

### MINGO COUNTY BOARD OF EDUCATION, Respondent Below, Appellant.

### Pamela Varney, Betty Sammons and Taunia Hale, Intervenors Below, Appellees.

No. 28667.

Supreme Court of Appeals of West Virginia.

Submitted March 20, 2001.

Decided July 9, 2001.

John Everett Roush, Esq., Charleston, for Appellee Hurley.

F. Thomas Rubenstein, Esq., Harry M. Rubenstein, Esq., Kay, Casto & Chaney, PLLC, Morgantown, for Appellant.

Cynthia E. Evans, Esq., Charleston, for Appellee Hale.

James M. Haviland, Esq., Crandall, Pyles, Haviland & Turner, Charleston, for Appellee Sammons.

McGRAW, Chief Justice.

This case concerns the effect of W. Va. Code § 18A–4–8g(i) (2000), which governs the treatment of multiclassified school service personnel during a reduction in force. The appellant Mingo County Board of Education ("BOE") asserts that the Circuit Court of Kanawha County erred as a matter of law in upholding the construction given to the statute by an Administrative Law Judge ("ALJ") of the Education and State Employ-

ees Grievance Board ("Grievance Board"), which has the effect of exposing multiclassified employees to reductions in force within the separate classification categories contained within their titles. We affirm the ruling of the circuit court, finding that § 18A–4–8g(i) clearly and unambiguously supports the conclusion reached by the ALJ and circuit court.

## I.

## BACKGROUND

This case stretches back some six years and is, in part, before this Court for the second time. The underlying facts are essentially undisputed. Appellee Paula Taylor Hurley worked as a secretary for the BOE, as did intervenor Taunia Hale, each holding the title of "Secretary II." During the 1994–95 school year, Ms. Hurley worked as a secretary at Red Jacket Grade School and Ms. Hale worked at Thacker Elementary School. Both held one year contracts.

Ms. Varney and Ms. Sammons, also intervenors in the present case, worked in the BOE's central office and were both multiclassified under W. Va.Code § 18A–4–8(i)(60).[1] Prior to September 1, 1994, Ms. Sammons held the position of "Clerk II," while Ms. Varney bore the lengthy appellation "Switchboard Operator/ Receptionist/ Clerk II." Effective September 1, 1994, the BOE reclassified both Ms. Varney and Sammons by adding the title of "Secretary III." Thus after that date, Ms. Sammons was a "Clerk II/ Secretary III," and Ms. Varney was a "Switchboard Operator/Receptionist/Clerk II/ Secretary III." [2]

At the end of the 1994–95 school year, the BOE decided that circumstances warranted the termination of two secretarial positions. As a result of this reduction in force, the BOE terminated both Ms. Hurley and Ms. Hale, and placed them upon its "preferred recall list." Ms. Sammons and Ms. Varney remained in the employ of the BOE at its central office.

Appellee Hurley subsequently filed a grievance asserting that the BOE should have retained her as a secretary pursuant to W. Va.Code § 18A–4–8b, in that she had more seniority in that position than either Ms. Sammons or Ms. Varney. After Ms. Hurley's grievance was denied at Level I, a Level II hearing was held on May 3, 1995, before an assistant school superintendent. Ms. Hale timely intervened, claiming that she had a similar right to be retained on the basis of seniority. Ms. Sammons and Ms. Varney likewise intervened at this juncture to protect their interests in the subject secretarial positions. On May 11, 1995, the decision to retain Ms. Sammons and Ms. Varney was upheld.

The parties waived a hearing at Level III, and the grievance proceeded to a Level IV hearing on July 20, 1995. The ALJ subsequently determined that Ms. Hurley had a right to retain her secretarial position based upon seniority, and that Ms. Sammons, having the least seniority, was required to give up her secretary classification. The ALJ went on to reject Ms. Hale's status as intervenor, concluding that intervention could only be used as a "shield" to defend against a claim, and not as a "sword" to achieve a remedy otherwise obtainable by filing a separate grievance.

The Circuit Court of Kanawha County later upheld the ALJ's determinations, but on appeal, this Court reversed and held that as an intervenor Ms. Hale was entitled to assert an affirmative claim for relief. *See Hale v. Mingo County Bd. of Educ.*, 199 W.Va. 387, 484 S.E.2d 640 (1997).

On remand to the Grievance Board, additional evidence was presented regarding the

1. The statute defines such employees as "personnel employed to perform tasks that involve the combination of two or more class titles in this section." W. Va.Code § 18A–4–8(i)(60) (2000). Reference will be made throughout this opinion to statutes as they are presently codified, as no substantive changes have been made to these provisions since the events giving rise to the present case.

2. Appellant uses slightly different terminology for Ms. Varney's title, and informs us that at some point Ms. Varney was later classified as a Switchboard-receptionist/Clerk II/Accountant, and Ms. Sammons a Clerk II/Accountant.

employment history of Ms. Hale, which resulted in a second decision being handed down on April 8, 1998. In that decision, a different ALJ made the following factual determinations regarding the relative seniority of the four employees:

| Hale | 25 months, 10 days |
|---|---|
| Hurley | 16½ months |
| Varney | 15½ months |
| Sammons | 12 months |

Notwithstanding these factual findings, which are not disputed in the present proceedings, the ALJ inexplicably concluded that Ms. Hale and Ms. Varney should have been retained as secretaries, to the exclusion of Ms. Hurley and Ms. Sammons. Ms. Hurley thereafter sought review before the Circuit Court of Kanawha County, which by a final order entered on February 28, 2000, found that although the ALJ's factual findings were supported by substantial evidence,[3] Ms. Hurley rather than Ms. Varney was entitled to retain her secretarial position given the former employee's greater seniority.[4]

In reaching this result, the circuit court rejected the contention that W. Va.Code § 18A–4–8g(i) insulated the multiclassified Ms. Sammons and Ms. Varney from being displaced through a reduction in force aimed at employees holding single job classifications: "The Court reads this statute to permit a multi-classified employee to be bumped by any employee who is senior to the multi-classified employee in any of the multi-classified employee's classifications."[5] It is from

this decision, in favor of Ms. Hale and Ms. Hurley, that the BOE now appeals.

## II.

## STANDARD OF REVIEW

■ As we recently explained in *Napier v. Lincoln County Bd. of Educ.*, 209 W.Va. 719, 551 S.E.2d 362 (2001), "[t]his Court undertakes *de novo* review of action taken by a circuit court under the judicial review provisions of W. Va.Code § 18–29–7, in that we are bound to employ the same standard as that which the statute imposes upon the lower courts." 209 W.Va. at 722, 551 S.E.2d at 365 (citing *Martin v. Randolph County Bd. of Educ.*, 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995)). "In other words, we give no deference to the circuit court, but instead undertake to apply the criteria of § 18–29–7 directly to the findings and conclusions of the ALJ." *Id.* (citation omitted).

■ Under W. Va.Code § 18–29–7, a party aggrieved by a decision rendered by the Grievance Board

may appeal to the circuit court of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of

---

3. See syl. pt. 1, *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989) ("A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.").

4. The circuit court noted in its order that "[i]t appears that the ALJ's decision, insofar as it found that Ms. Varney should retain her position in spite of the fact that she had less seniority than Ms. Hurley, resulted from a clerical error or oversight, rather than a mistake of fact or misapplication of law to the facts."

5. In a footnote, the circuit court observed that "[t]he statute is written in such a manner as to make multi-classified employees more likely to be bumped during a reduction in force, since they can be bumped by employees in any of the classifications in which they are multiclassified. Ms. Varney could be bumped by a secretary,

clerk, or receptionist, while Ms. Sammons could be bumped by a secretary or clerk." Both the decision of the Grievance Board's ALJ and the ruling of the lower court are unclear as to the effect of the retention of Ms. Hurley and Ms. Hale on the two multiclassified employees. Given the clear requirement of § 18A–4–8g(i) that following a reduction in force a multiclassified employee "shall retain employment in any of the other classification categories that he or she holds within his [or her] multiclassification title," we presume that neither the ALJ nor the circuit court intended that the employment of Ms. Sammons and Ms. Varney would be terminated entirely. Indeed, Grievance Board precedent is in accord with the notion that a multiclassified employee should retain employment in the classification categories not subject to a reduction in force. *See, e.g., Baker v. Cabell County Bd. of Educ.*, Grievance Bd. Docket No. 96–06–317 (June 9, 1997).

fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In undertaking such judicial review,

[w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts.... Nonetheless, this Court must determine whether the ALJ's findings were reasoned, i.e., whether he or she considered the relevant factors and explained the facts and policy concerns on which he or she relied, and whether those facts have some basis in the record. We review *de novo* the conclusions of law and application of law to the facts.

*Martin,* 195 W.Va. at 304, 465 S.E.2d at 406; *see also Smith v. West Virginia Div. of Rehab. Services and Div. of Personnel,* 208 W.Va. 284, 286, 540 S.E.2d 152, 154 (2000) (undertaking plenary review where "[t]he decisions of the circuit court and the administrative law judge were rulings strictly regarding matters of law").

## III.

## DISCUSSION

This case presents a straightforward question of law. The BOE posits that "multiclassification," as that term is defined by W. Va.Code § 18A–4–8(i)(60) (2000),[6] should be recognized as a separate and distinct classification category, such that a reduction in force in any one classification category should have no effect on multiclassified employees.

In support of this argument, the BOE points to the fact that the term "multiclassification" is defined in § 18A–4–8(i) together with a multitude of other classification titles. On this basis, the BOE contends that the Legislature must have intended that multiclassified service employees should be treated as falling within their own classification category, and, since the reduction in force in this case involved only the secretarial catego-

ry, the multiclassified employees were immune from the effects of the subject layoffs.

At first blush, the inclusion of "multiclassification" among the classification titles set forth in § 18A–4–8(i) would seem to support the BOE's argument that the Legislature intended to make multiclassification a separate employment category. West Virginia Code § 18A–4–8b para. 4 (1996) expressly provides, in relevant part, that "each class title listed in [§ 18A–4–8] shall be considered a separate classification category of employment for service personnel, except for those class titles having Roman numeral designations, which shall be considered a single classification of employment." In accord with this language, the Grievance Board at one time determined, based in part upon an interpretation placed upon the statute by the State Superintendent of Schools, that "multiclassified positions are separate and apart from their individual assignments and that those employees are exempt from bumping by employees from ... individual classification[s] during a reduction in force ...." *Shahan v. Preston County Bd. of Educ.,* Grievance Bd. Docket No. 92–39–213 (Dec. 29, 1992). BOE maintains in this case that as administrative precedent, the determination by the State Superintendent, as evidenced by *Shahan,* should continue to be given substantial deference. *E.g.,* syl. pt. 1, *Dillon v. Bd. of Educ. of County of Mingo,* 171 W.Va. 631, 301 S.E.2d 588 (1983) (" 'Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' ") (citation omitted).

The flaw in the BOE's argument is that it fails to fully comprehend the Legislative response to the administrative position that was sustained in *Shahan.* Within four month's of the Grievance Board's decision in *Shahan,* the Legislature in April 1993 enacted the predecessor to current W. Va.Code § 18A–4–8g(i). *See* 1993 W. Va. Acts ch. 49. The statute provides, in its present form with only stylistic corrections to the original:

School service personnel who hold multiclassification titles shall accrue seniority in each classification category of employment

6. *See* note 1, *supra,* for the relevant text of W. Va.Code § 18A–4–8(i)(60).

which the employee holds and *shall be considered an employee of each classification category contained within his or her multiclassification title.* Multiclassified employees are subject to reduction in force in any category of employment contained within their multiclassification title based upon the seniority accumulated within that category of employment: Provided, That if a multiclassified employee is reduced in force in one classification category, the employee shall retain employment in any of the other classification categories that he or she holds within his multiclassification title. In that case, the county board shall delete the appropriate classification title or classification category from the contract of the multiclassified employee.

W. Va.Code § 18A–4–8g(i) (2000) (emphasis added). Since the enactment of § 18A–4–8g(i), the Grievance Board has taken a position consistent with its stance in the present case, that multiclassified employees are not part of a separate employment category. *See, e.g., Grose v. Cabell County Bd. of Educ.,* Grievance Bd. Docket No. 96–06–274 (Feb. 26, 1997); *Williams v. Raleigh County Bd. of Educ.,* Grievance Bd. Docket No. 96–41–169 (Dec. 31, 1996).

█ We agree with the position taken by Grievance Board to the effect that the enactment of § 18A–4–8g(i) should be taken as an express legislative rejection of multi-classification as an independent employment category. A legislature is presumed to be aware of administrative and judicial interpretations of statutes and to adopt such interpretations when it reenacts a statute without change. *See, e.g., Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40, 46 (1978).[7] In this instance, however, the Legislature, rather than acquiescing in the treatment afforded multiclassified employees under existing law, took affirmative steps to make it unequivocally clear that each multiclassified employee "shall be considered an employee of each classification category contained within his or her multiclassification title." W. Va.Code § 18A–4–8g(i). Moreover, the statute goes on to give unambiguous direction as to the effect of a reduction in force on multiclassified employees: "Multiclassified employees are subject to reduction in force in any category of employment contained within their multiclassification title based upon the seniority accumulated within that category of employment." *Id.*[8] The statute simply could not be more clear that multiclassification is not an independent employment category for any of the purposes outlined in the article. To the extent that there is any inconsistency with the more general provision of § 18A–4–8b, which instructs that the class titles set forth in § 18A–4–8(i) should be regarded as "separate classification categor[ies]," § 18A–4–8g(i) represents both a more recent[9] and more specific[10] legislative determination as to the status of multiclassified employees and therefore controls.

Perhaps understanding the difficulty that this Court would have in reaching any other conclusion as to the effect of § 18A–4–8g(i), the BOE goes on to contend that we must

---

7. This, of course, presumes that the statutory text is not so clear and unambiguous that an administrative interpretation may be characterized as plainly erroneous. *See Demarest v. Manspeaker,* 498 U.S. 184, 190, 111 S.Ct. 599, 603, 112 L.Ed.2d 608, 616 (1991).

8. Section 18A–4–8g also states, in more general terms, that "[f]or all purposes including the filling of vacancies and reduction in force, seniority shall be accumulated within particular classification categories . . . ." W. Va.Code § 18A–4–8g(b) (2000).

9. *See* syl. pt. 2, *State ex rel. Dep't of Health and Human Res. v. West Virginia Pub. Employees Ret. Sys.,* 183 W.Va. 39, 393 S.E.2d 677 (1990) ("As a general rule of statutory construction, if several statutory provisions cannot be harmonized, controlling effect must be given to the last enactment of the Legislature."); *see also West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W.Va. 326, 336, 472 S.E.2d 411, 421 (1996) ("when two statutes conflict, the general rule is that the statute last in time prevails as the most recent expression of the legislative will") (citing, *inter alia,* syl. pt. 2, *Stamper by Stamper v. Kanawha County Bd. of Educ.,* 191 W.Va. 297, 445 S.E.2d 238 (1994)).

10. *See* syl. pt. 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled.").

reject a literal interpretation of the statute because to do so would create an absurd and impractical result. The BOE suggests that if we were to read the statute as permitting service employees holding single classifications to retain their positions at the expense of the classifications held by multiclassified employees, it would make it difficult, if not impossible, to accomplish a reduction in force. Using the present case as an example, the BOE points to the fact that if it were required to keep Ms. Hale and Ms. Hurley on the basis of their seniority, it would still be required to retain Ms. Sammons and Ms. Varney in their non-secretarial capacities.[11]

■■■ We appreciate the difficulties that § 18A–4–8g(i) may pose in the context of a reduction in force, but the Court discerns no basis for construing the statute in any other way than on the basis of its clear language. " 'A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.' " Syl. pt. 1, *Sowa v. Huffman,* 191 W.Va. 105, 443 S.E.2d 262 (1994) (quoting syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951)); *see also* syl. pt. 3, in part, *West Virginia Health Care Cost Review Auth. v. Boone Mem'l Hosp.,* 196 W.Va. 326, 472 S.E.2d 411 (1996) ("If the language of an enactment is clear and within the constitutional authority of the lawmaking body which passed it, courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery."). Of course, this fundamental rule does admit to exceptions:

Although courts should not ordinarily stray beyond the plain language of unambiguous statutes, we recognize the need to depart from the statutory language in ex-

ceptional circumstances. 2A G. Sutherland, *Statutory Construction* § 46.07 at 126 (5th ed.1991) (collecting exceptions). Courts, therefore, may venture beyond the plain meaning of a statute in the rare instances in which there is a clearly expressed legislative intent to the contrary, *Russello v. United States,* 464 U.S. 16, 20–21, 104 S.Ct. 296, 299–300, 78 L.Ed.2d 17, 22–23 (1983); in which a literal application would defeat or thwart the statutory purpose, *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75, 82 (1965); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973, 980–81 (1982); or in which a literal application of the statute would produce an absurd or unconstitutional result, *United States v. Amer. Trucking Ass'ns,* 310 U.S. 534, 543–44, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345, 1351 (1940). Where warranted a departure must be limited to what is necessary to advance the statutory purpose or to avoid an absurd or unconstitutional result.

*State ex rel. Frazier v. Meadows,* 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994).

■■■ We have previously signaled that it is this Court's duty "to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results." *State v. Kerns,* 183 W.Va. 130, 135, 394 S.E.2d 532, 537 (1990).[12] This does not mean, however, that we are at liberty to substitute our policy judgments for those of the Legislature whenever we deem a particular statute unwise. As one commentator has astutely observed,

the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy

---

**11.** While we take no position on the alternative means of effecting a reduction in force, the Court notes that Appellee Hurley indicates that an alternative course would have been to simply terminate both Ms. Hurley and Ms. Hale, and delete the secretarial classification from the multiclassified titles of Ms. Sammons and Ms. Varney. If there remained a need for a secretary at the BOE's main office, then the Board could have terminated the contracts of Ms. Sammons and/or Ms. Varney and posted the new multiclassified positions containing the secretarial component. As Ms. Hurley points out, through such method

"a reduction in force of two secretary positions could have been effected in accordance with the statute and with complete respect for the seniority rights of all parties."

**12.** *Accord Hall v. Board of Educ. of County of Mingo,* 208 W.Va. 534, 539, 541 S.E.2d 624, 629 (2000); *State ex rel. Simpkins v. Harvey,* 172 W.Va. 312, 320, 305 S.E.2d 268, 277 (1983); *Richardson v. State Compensation Comm'r,* 137 W.Va. 819, 824, 74 S.E.2d 258, 261 (1953).

on the basis of speculation that the legislature could not have meant what it unmistakably said.

2A Norman J. Singer, *Statutes and Statutory Construction* § 46:07, at 199 (6th ed.2000) (footnote omitted). The absurd results doctrine merely permits a court to favor an otherwise reasonable construction of the statutory text over a more literal interpretation where the latter would produce a result demonstrably at odds with any conceivable legislative purpose. *See State ex rel. McLaughlin v. Morris,* 128 W.Va. 456, 461, 37 S.E.2d 85, 88 (1946) (citing *Newhart v. Pennybacker,* 120 W.Va. 774, 200 S.E. 350 (1938)). It does not, however, license a court to simply ignore or rewrite statutory language on the basis that, as written, it produces an undesirable policy result.

 In this case, the BOE logically approaches the question of the purported absurdity of § 18A–4–8g(i) from its own vantage point. But in truth, the statute could just as easily be interpreted as embodying an eminently reasonable policy decision to favor the equitable treatment of school service personnel over mere administrative convenience. Indeed, the practical consequence of adopting BOE's point of view would be the creation of a two-tier system of seniority, with multiclassified employees on one level and those holding single job classifications on another. We simply are not inclined to ignore otherwise clear statutory language which appears to result from reasoned policy determinations by the Legislature. As we have stressed on numerous occasions, "[i]t is not the province of the courts to make or supervise legislation, and a statute may not, under the guise of interpretation, be modified, revised, amended, distorted, remodeled, or rewritten[.]" *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 145, 107 S.E.2d 353, 358 (1959) (citation omitted). " '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.' " *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 312, 465 S.E.2d 399, 414 (1995) (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391, 397 (1992)).

 The Court therefore holds that pursuant to W. Va.Code § 18A–4–8g(i), multiclassified school service personnel do not belong to a separate or unique classification category, but rather are employees of each classification category contained within their respective multiclassification titles. Under the statute, a multiclassified employee accrues seniority in each of the several classification categories composing his or her multiclassification title, and, correspondingly, is subject to a reduction in force in these individual job categories on the basis of the respective seniority accumulated in each. In all instances where an employee has seniority in a particular job category—whether that employee is multiclassified or holds only a single job classification—such employee will be entitled to preference during a reduction in force in that category. In the event a multiclassified employee is subject to a reduction in force in one or more, but less than all, of the categories composing his or her multiclassification title, such employee remains in the employ of the county board of education with those categories that are subject to the reduction in force being deleted from the employee's multiclassification title.

Thus, in this case, since Ms. Sammons and Ms. Varney were determined to have less seniority in the secretary category than either Ms. Hurley and Ms. Hale, the circuit court was correct in requiring that the BOE retain the latter two employees in their jobs as secretaries.

### IV.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Kanawha County is affirmed.

Affirmed.