**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **Adoption of E.U., L.U.-1, and L.U.-2**

**No. 20-0039** (Mason County 19-A-15, 19-A-16, and 19-A-17)

**MEMORANDUM DECISION**

Self-represented petitioners S.U. and C.U. appeal the Circuit Court of Mason County's January 15, 2020, "Order Denying Petitioners' Motion to Vacate Order Denying Petition for Adoption."[1] Respondent C.J. made no appearance before this Court.[2] On appeal, petitioners argue that the circuit court erred in denying the petition for adoption because respondent's consent was not required, its application of res judicata and collateral estoppel was erroneous, and because they were denied due process.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The history of the parties, their relationship, and the births of their children were thoroughly discussed in petitioner S.U.'s prior appeal to this Court. *See S.U. v. C.J.* ("*S.U. I*"), No. 18-0566, 2019 WL 5692550 (W. Va. Nov. 4, 2019)(memorandum decision). Accordingly, it is unnecessary for this Court to recount the entirety of the parties' history herein, but it will suffice to reference certain facts that are relevant to the resolution of the instant matter. As this Court previously found, petitioner S.U. and respondent were in an intimate relationship for approximately twelve years and have four children together, said children having been conceived in nonconventional ways. *Id.* at

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, they will be referred to as L.U.-1 and L.U.-2 throughout this memorandum decision.

[2]Despite the fact that respondent did not file a brief before this Court, petitioner filed a reply brief.

1

*1. The parents initially attempted to conceive children through sexual intercourse, but ultimately utilized various alternative methods of fertilization due to the fact that petitioner S.U. was listed as a female on his birth certificate. *Id.* According to petitioner S.U., "he was not a binary male or female at birth, although he has always considered himself to be male." *Id.* Prior to the parents' relationship, petitioner S.U. had his ova harvested and stored, and these ova were used to conceive at least three of the parents' children through in vitro fertilization. *Id.* at *1-2. As this Court previously noted, at the time of these in vitro fertilization procedures, respondent believed that the embryos were from petitioner S.U.'s sperm and an anonymous egg donor, and she gave birth to all four of the parties' children. *Id.* Eventually, respondent became pregnant with twins, at which point the parents' relationship deteriorated and petitioner S.U.'s history of verbal abuse toward respondent worsened. *Id.* at *2.

Prior to the twins' births, petitioner S.U. attempted to preclude respondent from being listed as the mother on the children's birth certificates by filing a "Petition for Declaration of Parentage." *Id.* According to petitioner S.U., he and respondent entered into a custody agreement in 2005 that, in relevant part, required respondent to serve as a gestational surrogate for their three youngest children and precluded her from asserting custody over those children. *Id.* During prior proceedings in family court, petitioner S.U.'s motion to amend the children's birth certificates to omit respondent was denied. *Id.* Importantly, after holding hearings to resolve the issues between the parents, "[t]he family court concluded that the purported Custodial Agreement was unenforceable" and that respondent's name would remain on the children's birth certificates. *Id.* at *3. Petitioner S.U. appealed this decision to the circuit court, which refused his appeal, and on further appeal, this Court affirmed the lower courts' rulings. *Id.* at *3-4. In affirming the lower courts, we found that "all of [petitioner S.U.'s assignments of error] . . . [w]ere grounded on his contention that [respondent] was nothing more than a gestational surrogate for the parties' three youngest children." *Id.* at *4. We found that the family court resolved this conflict in respondent's favor and refused to disturb these findings. *Id.* In ruling that the custody agreement was unenforceable, this Court unequivocally concluded that respondent "is the legal mother of all four children." *Id.*

The same month that this Court issued its decision in his prior appeal, petitioner S.U. filed an "Emergency Petition to Disestablish Maternity of Gestational Surrogate" in the Circuit Court of Gilmer County seeking to have respondent removed from the birth certificates of the parents' three youngest children and to have them returned to his custody. *S.U. v. C.J.* ("*S.U. II*"), No. 19-1181, 2021 WL 365824 at *2 (W. Va. Feb. 2, 2021)(memorandum decision). Shortly after the petition's filing, the court entered an order dismissing the matter. *Id.* Citing this Court's opinion in *S.U. I*, the court found that the "instant petition appears to be an attempt to have this [c]ourt overturn a decision of the W.Va. Supreme Court of Appeals, which this [c]ourt cannot do." *Id.* Further, the court found that "[t]he rights of these parties to these children, and the issue of the birth certificate, have previously been decided by the Mason County Family Court, and affirmed by the W.Va. Supreme Court of Appeals." *Id.* As such, the court found that res judicata precluded petitioner "from re-opening these matters which have already been adjudicated." *Id.* Accordingly, the court entered its December 11, 2019, order denying the petition. *Id.* Petitioner again appealed to this Court, and we affirmed the lower court's decision. *Id.* at 4.

2

As to the matter currently on appeal, petitioners filed petitions for petitioner C.U. to adopt all three children in May of 2019. In support, petitioners asserted that the children were born pursuant to a gestational surrogacy agreement and that no individual's consent to adoption was required, as the children's biological parents were petitioner S.U. and an anonymous donor. Shortly after their filing, the lower court held the petitions for adoption in abeyance "until such time as the statutory prerequisites for filing an adoption were met" and later denied petitioners' motion to lift the abeyance "until resolution of an appeal to the West Virginia Supreme Court of Appeals" of the order appealed in *S.U. I*. Thereafter, by order entered on November 5, 2019, the court lifted the abeyance and denied the petitions for adoption. According to the court, West Virginia Code § 48-22-301(a)(3) requires the consent of the birth mother for an adoption to take place. The court cited this Court's holding in *S.U. I* that respondent C.J. is the children's mother and that her consent was required for the adoptions to proceed. Because respondent "clearly disavows any consent to the adoption," the court denied the petitions and dismissed the matters.

Following the entry of that order, petitioners retained counsel who then filed a motion to vacate the order denying the petitions for adoption on November 14, 2019. Petitioners indicated that the motion was filed pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, and it was filed within ten days of the entry of the order it sought to vacate. As such, the motion was clearly a motion to alter or amend the judgment under Rule 59(e). Syl. Pt. 1, *Richardson v. Kennedy*, 197 W. Va. 326, 475 S.E.2d 418 (1996) ("A motion to amend or alter judgment, even though it is incorrectly denominated as a motion to 'reconsider', 'vacate', 'set aside', or 'reargue' is a Rule 59(e) motion if filed and served within ten days of entry of judgment.").

In seeking to vacate the prior order, petitioners argued that this Court found in *S.U. I* that respondent is the children's *legal* mother for purposes of birth certificate registration under West Virginia Code § 16-5-10(e), but that West Virginia Code § 48-22-301 governing adoptions requires the consent of the "birth mother." According to West Virginia Code § 48-22-106, the "birth mother" is "the biological mother of the child." The court found, however, that this Court rejected the assertion that respondent was merely a gestational surrogate in allocating custodial rights of the minor children to her. According to the court, "[t]o now ask this [c]ourt to apply the adoption statute to permit a stepparent adoption by [S.U.]'s spouse, and by doing so, terminate the parental rights of [r]espondent . . . is absurd." Ultimately, the court found that "[t]he issue of parental rights to the minor child[ren] was decided by the Family Court of . . . Mason County, the appeal of which was refused by this [c]ourt, and affirmed by the West Virginia Supreme Court of Appeals." The court further found that res judicata and collateral estoppel applied as bars to vacate the prior order, given that there had been a final adjudication on the merits of the issue by the family court, the matter involved the same parties, and the matter of parental rights to the children had previously been resolved. The court also found that, to the extent the distinction surrounding the definition of "birth mother" under the adoption statute was relevant to a determination of respondent's parental rights, the issue should have been previously raised. Based on the foregoing, the court denied the motion to vacate. It is from this order that petitioners appeal.

We have previously set forth the following:

"When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the

3

final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl., *McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 475 S.E.2d 507 (1996).

Syl. Pt. 1, *In re S.W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015). Further,

> [t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

Syl. Pt. 1, *Wickland v. Am. Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

On appeal, petitioners raise several assignments of error. It is unnecessary to address these specific arguments, however, because, yet again, they all turn on petitioner S.U.'s assertion that respondent C.J. is not the children's mother, a position this Court wholly rejected in *S.U. I*. Petitioners attempt to circumvent this basic fact, as petitioner S.U. has in past appeals, by obfuscating the record in prior matters and attempting to present issues narrowly when it is clear that the overarching issue in all of these cases has been and remains petitioner S.U.'s attempt to obtain custody of the children. For example, petitioners would have this Court believe that its prior holding in *S.U. I* concerned only a determination as to whether respondent C.J. was the children's legal mother for purposes of her inclusion on their birth certificate. While it is true that this was one issue that was resolved in that appeal, the fact remains that the case concerned much broader issues, including allocation of custodial responsibility for the children. *S.U. I*, No. 18-0566, 2019 WL 5692550, at *5. Although petitioner S.U.'s specific assignments of error in *S.U. I* did not warrant a detailed discussion of this issue, the record is clear that he was granted temporary custody of two of the parents' children at one point, but that his temporary custody was "short-lived." *Id.* at *2 n.6. Ultimately, the order on appeal in that matter designated respondent C.J. as the children's primary residential and custodial parent. *Id.* at *1. Given that the prior matter not only concerned our determination that respondent C.J. is the children's legal mother and is entitled to the rights that flow from that designation but also implicitly approved of the lower court's allocation of custodial rights to her, it would be patently absurd for us to now allow petitioners to circumvent this ruling by simply applying for adoption and denying respondent C.J.—the children's legal mother—from exercising her parental rights to these children.

As we noted in *S.U. I*, petitioner S.U. is listed as the father on all the children's birth certificates and respondent C.J. is listed as their mother. *Id.* However, as we recognized in that case, "[i]t is undisputed that [respondent C.J.] has no genetic connection to the three youngest children," despite having given birth to all three. *Id.* at *2. While acknowledging these facts, the Court nonetheless declined to enforce the purported custody agreement "that would strip [respondent C.J.] of *legal rights to her three youngest children*." *Id.* at *4 (emphasis added). More emphatically, this Court held that respondent C.J. "is the legal mother of all [three] children." *Id.* As such, it is clear that this Court has already found that respondent C.J. is the children's legal mother and enjoys all rights flowing from that designation, including the right to primary custody of the children at issue under the family court's prior order allocating custodial responsibility. In

4

the circuit court and on appeal in this matter, petitioners attempt to ignore this holding by relying entirely on the definition of "birth mother" under West Virginia Code § 48-22-106. Although we recognize that the statute in question defines "birth mother" as "the biological mother of the child," we reject petitioners' argument that this definition means that respondent C.J.'s consent is therefore not required for adoption under West Virginia Code § 48-22-301(a)(3). We have previously explained that "it is this Court's duty 'to avoid whenever possible a construction of a statute which leads to absurd, inconsistent, unjust or unreasonable results.'" *Taylor-Hurley v. Mingo Cty. Bd. of Educ.*, 209 W. Va. 780, 551 S.E.2d 702 (2001) (citation omitted). We recognize, however, that "[t]his does not mean . . . that we are at liberty to substitute our policy judgments for those of the Legislature whenever we deem a particular statute unwise." *Id*. at 787, 551 S.E.2d at 709. Indeed, we have recognized that this doctrine "should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said." *Id*. at 787-88, 551 S.E.2d at 709-10 (citation omitted). Instead, "[t]he absurd results doctrine merely permits a court to favor an otherwise reasonable construction of the statutory text over a more literal interpretation where the latter would produce a result demonstrably at odds with any conceivable legislative purpose." *Id*. (citation omitted). That is precisely what we seek to accomplish today.

Petitioners herein seek to obtain a result that is demonstrably at odds with the explicit legislative purpose of West Virginia Code § 48-22-301(a)(3), which protects a birth mother from having her nonmarital child adopted by someone else without requiring her consent. While respondent C.J. is, admittedly, not the children's biological mother, she is, nonetheless, the woman who gave birth to the children and has been designated as their legal mother. In analogous contexts, this Court has been unequivocal that individuals who are not biologically related to a child may nonetheless enjoy all the rights, duties, privileges, and relations to which a biological parent would be entitled. *In re Adoption of J.S.*, -- W. Va. --, 858 S.E. 214, 219 (2021) (quoting W. Va. Code § 48-22-701(d)). Indeed, this Court was clear that "from the moment an adoption order is entered, an adoptive parent has the same rights 'as if the child had been born to' him or her." *Id*. While we recognize that no adoption order is implicated in this matter, the family court's earlier order granting respondent legal status as the children's mother nevertheless achieved the same result by implicitly granting respondent the same rights as if she were the children's biological mother. To interpret West Virginia Code § 48-22-301(a)(3), our prior holdings, and past rulings concerning respondent's relationship to the children at issue in any other matter would be absurd. We therefore conclude that the circuit court did not err in finding that respondent's consent was required for petitioner C.U. to adopt the children, as this is the only logical interpretation under the limited facts of this particular case that would give effect to the Legislature's clear intent in requiring such consent in the first instance.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 11, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: October 13, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton