# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2021 Term**

_____

**No. 19-1028**

_____

**FILED**

**March 26, 2021**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**WEBSTER COUNTY BOARD OF EDUCATION,**
Respondent Below, Petitioner

**V.**

**DONNIS DAVIS, KAREN HOLCOMB, AUDREY FLANAGAN,**
**AND SAMANTHA MCCOURT,**
Petitioners Below, Respondents

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Louis H. Bloom, Judge
Civil Action No. 19-AA-42

**REVERSED AND REMANDED**

_____

Submitted: January 27, 2021
Filed: March 26, 2021

Richard S. Boothby
Bowles Rice LLP
Parkersburg, West Virginia
Joshua A. Cottle
Bowles Rice LLP
Charleston, West Virginia
Attorneys for the Petitioner

Andrew J. Katz
The Katz Working Families' Law
Firm, LC
Charleston, West Virginia
Attorney for the Respondents

**CHIEF JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE HUTCHISON and JUSTICE WOOTON dissent and reserve the right to file dissenting opinions.**

**SYLLABUS BY THE COURT**

1.      Under West Virginia Code sections 18A-4-8g(d) (eff. 2007), 18A-4-8(i) (eff. 2015), and 18A-4-8a(2) (eff. 2019), the school service personnel classifications of Aide and Early Childhood Classroom Assistant Teacher (ECCAT) accrue seniority independently from each other for purposes of a reduction in force.  As such, only the seniority for the specific classification subject to a reduction in force shall be considered in ranking the seniority of the affected personnel.

2.      Under West Virginia Code sections 18A-4-8b(h), (i), & (j) (eff. 2016), the school service personnel classifications of Aide and Early Childhood Classroom Assistant Teacher (ECCAT) accrue seniority independently from each other for purposes of a reduction in force.  As such, only the seniority for the specific classification subject to a reduction in force shall be considered in ranking the seniority of the affected personnel.

3.      "Pursuant to W. Va. Code § 18A-4-8g[(*l*) (eff. 2007)], multiclassified school service personnel do not belong to a separate or unique classification category, but rather are employees of each classification category contained within their respective multi-classification titles.  Under the statute, a multiclassified employee accrues seniority in each of the several classification categories composing his or her multiclassification title, and, correspondingly, is subject to a reduction in force in these individual job categories on the basis of the respective seniority accumulated in each. In all instances where an

i

employee has seniority in a particular job category—whether that employee is multiclassified or holds only a single job classification—such employee will be entitled to preference during a reduction in force in that category. In the event a multiclassified employee is subject to a reduction in force in one or more, but less than all, of the categories composing his or her multiclassification title, such employee remains in the employ of the county board of education with those categories that are subject to the reduction in force being deleted from the [contract of the multiclassified employee]." Syllabus point 5, *Taylor-Hurley v. Mingo County Board of Education*, 209 W. Va. 780, 551 S.E.2d 702 (2001).

4.      A school service employee who has held or holds an Aide title and becomes employed as an Early Childhood Classroom Assistant Teacher (ECCAT) shall hold a multiclassification status. As a multiclassification status employee, the method of calculating such an employee's seniority rank for purposes of a reduction in force is governed by West Virginia Code section 18A-4-8g(*l*) (eff. 2007) and Syllabus point 3 of this opinion, which quotes, with corrections, Syllabus point 5 of *Taylor-Hurley v. Mingo County Board of Education*, 209 W. Va. 780, 551 S.E.2d 702 (2001). Under these authorities, seniority for the Aide and Early Childhood Classroom Assistant Teacher (ECCAT) classification titles accrue independently from each other.

Jenkins, Chief Justice:

This appeal addresses the manner in which seniority is calculated for purposes of a reduction in force among school service personnel who were originally hired by a county board of education as an Aide and then subsequently obtained certification as an Early Childhood Classroom Assistant Teacher ("ECCAT"). Petitioner, the Webster County Board of Education ("Webster BOE"), argues that the circuit court erred in finding that seniority for purposes of a reduction in the number of service personnel who are certified as ECCATs is calculated by the subject employees' accumulated seniority earned in the position of Aide. Instead, the Webster BOE contends that seniority for such purposes should be calculated solely based upon the accumulated amount of ECCAT seniority possessed by the subject employees. Respondents, four Webster BOE employees who were initially hired at different times as Aides and then subsequently obtained ECCAT certification and began accruing seniority as ECCATs as of the same date (collectively "Grievants"),[1] argue that the circuit court correctly calculated their ECCAT seniority based upon their accumulated seniority as Aides. Having considered the relevant statutes, we conclude that the Legislature plainly intended that the school service personnel classifications of Aide and ECCAT accrue seniority independently from each other for

---

[1] The individual employees who are respondents to this appeal are Donnis Davis, Karen Holcomb, Audrey Flanagan, and Samantha McCourt. Another Webster BOE employee, Diane Carpenter, also was before the Kanawha County Circuit Court in a separate case addressing the same issue. She is the respondent in a separate appeal by the Webster BOE. *See Carpenter v. Webster Cty. Bd. of Ed.*, No. 20-0231. The appeal pertaining to Ms. Carpenter's grievance has been held in abeyance pending our decision in the case *sub judice*.

1

purposes of determining seniority in connection with a reduction in force. As such, only the seniority for the specific classification subject to a reduction in force shall be considered in ranking the seniority of the affected personnel. In addition, we conclude that school service personnel who have held or hold an Aide title and then become employed as an ECCAT hold a multiclassification status. Nevertheless, their Aide and ECCAT seniority also accrues independently from each other for purposes of a reduction in force. Based upon these conclusions, we find that the circuit court's decision that Aide seniority is used to determine the rank of service personnel subject to a reduction of force in the ECCAT class title is contrary to the law. Accordingly, we reverse the Circuit Court of Kanawha County's order of October 10, 2019, and we remand the case for entry of an order consistent with this opinion.

# I.

## FACTUAL AND PROCEDURAL HISTORY

Each of the four Grievants commenced working for the Webster BOE under the service personnel class title[2] of Aide on a different date: Audrey Flanagan,[3] February

---

[2] Pursuant to West Virginia Code section 18A-4-8(i)(3) (eff. 2015), "'[c]lass title' means the name of the position or job held by a service person[.]"

[3] According to the Decision of the West Virginia Public Employees Grievance Board, Donnis Davis and Audrey Flanagan also have Autism Mentor certification.

28, 1985;[4] Donnis Davis, December 15, 1992; Samantha McCourt, January 23, 2006; and Karen[5] Holcomb, October 19, 2007. Thus, based upon their varying employment dates, they each acquired different amounts of seniority for the class title Aide.[6] Each of the Grievants apparently was working in a Webster BOE kindergarten program prior to July 1, 2014.

Before completing our recitation of the factual and procedural course of the instant case, we pause to set out the history of the relevant statutory provision in order to place the remaining factual details in their proper context.

In 2013, the West Virginia Legislature created the position of ECCAT as a new service personnel class title, and, as demonstrated by the use of the term "shall," made

---

[4] The Decision of the West Virginia Public Employees Grievance Board states that Audrey Flanagan commenced work under the Aide class title on February 30, 1985. Since no such date exists, we have substituted February 28, which is the last day of February 1985.

[5] In the appendix record in this matter, Ms. Holcomb is sometimes referred to as "Kerry Holcomb," and she is identified as "Kerry Y. Holcomb" on her Level One and Level Two grievance forms. Nevertheless, the circuit court's order and the parties' briefs identify her as "Karen Holcomb," so we will utilize that name.

[6] According to West Virginia Code section 18A-4-8g(a)(1) (eff. 2007), "[s]eniority accumulation for a regular school service person: (1) Begins on the date the employee enters upon regular employment duties pursuant to a contract as provided in section five [§ 18A-2-5], article two of this chapter[.]"

that new class title a mandatory requirement to assist in a public-school kindergarten program:

> Beginning July 1, 2014, any person previously employed as an aide in a kindergarten program and who is employed in the same capacity on and after that date and any new person employed in that capacity in a kindergarten program on and after that date *shall* hold the position of either Early Childhood Classroom Assistant Teacher [ECCAT] – Temporary Authorization, Early Childhood Classroom Assistant Teacher [ECCAT] – Permanent Authorization or Early Childhood Classroom Assistant Teacher [ECCAT] – Paraprofessional Certificate . . . .

W. Va. Code § 18-5-18(b) (eff. 2013) (emphasis added).  To qualify for an ECCAT class title, a school service employee must meet certain requirements that are not necessary to hold the class title of Aide.  However, the Legislature created a temporary ECCAT authorization for employees who do not meet the minimum requirements for a permanent ECCAT authorization, but who are pursuing those requirements.[7]  In addition, the Legislature provided that "[a]ny person employed as an aide in a kindergarten program that is eligible for full retirement benefits before July 1, 2020, may remain employed as an aide

---

[7] *See* W. Va. Code § 18A-4-8(i)(36) (eff. 2013) (defining "Early Childhood Classroom Assistant Teacher [ECCAT] – Temporary Authorization" as "a person who does not possess minimum requirements for the permanent authorization requirements, but is enrolled in and pursuing requirements").  This class title was later changed to "Early Childhood Classroom Assistant Teacher I [ECCAT I]," but the definition did not change. *See* W. Va. Code § 18A-4-8(i)(36) (eff. 2015).  According to a rule promulgated by the State Board of Education, "[t]he initial Early Childhood Classroom Assistant Teacher-Temporary Authorization is valid for one school year and may be renewed twice in accordance with WVBE Policy 5202."  126 W. Va. C.S.R. § 28.16.2.c.1.

in that position and may not be required to acquire licensure pursuant to this section."

W. Va. Code § 18-5-18(b).[8]

In 2015, West Virginia Code section 18-5-18(b) was amended and the ECCAT class title designations were changed from ECCAT–Temporary Authorization, ECCAT–Permanent Authorization, and ECCAT–Paraprofessional Certificate, to ECCAT I, ECCAT II, and ECCAT III. The remaining language of the section was largely unchanged:

> Beginning July 1, 2014, any person previously employed as an aide in a kindergarten program and who is employed in the same capacity on and after that date and any new person employed in that capacity in a kindergarten program on and after that date shall hold the position of aide and either Early Childhood Classroom Assistant Teacher I, Early Childhood Classroom Assistant Teacher II or Early Childhood Classroom Assistant Teacher III. Any person employed as an aide in a kindergarten program that is eligible for full retirement benefits before July 1, 2020, may remain employed as an aide in that position and shall be granted an Early Childhood

---

[8] Such an individual may be granted an ECCAT II permanent authorization. *See* 126 W. Va. C.S.R. § 136-12.3.c ("Any person employed as an aide in a pre-k or kindergarten program on or before July 1, 2014, and [who] is eligible for full retirement benefits before July 1, 2020, may remain employed as an aide in that position and upon application shall be granted an ECCAT II, permanent authorization by the State Superintendent pursuant to W. Va. Code § 18-2a-3."). In addition, under West Virginia Code section 18A-4-8(t) (eff. 2015),

> [a]ny person employed as an aide in a kindergarten program who is eligible for full retirement benefits before the first day of the instructional term in the 2020-2021 school year, may not be subject to a reduction in force or transferred to create a vacancy for the employment of a less senior Early Childhood Classroom Assistant Teacher[.]

> Classroom Assistant Teacher permanent authorization by the state superintendent pursuant to Section two-a [§ 18A-3-2a], article three, chapter eighteen-a of this code.

W. Va. Code § 18-5-18(b) (eff. 2015). In 2017 this provision was redesignated, and it is now found at West Virginia Code section 18-5-18(c) (eff. 2017). For ease of reference and consistency, we will refer to the different levels of ECCAT by their current designations of I, II, or III.

Turning back to the instant case, because each of the Grievants apparently was working in a Webster BOE kindergarten program prior to July 1, 2014, each of them obtained ECCAT authorization under West Virginia Code section 18-5-18(b), and each of them began their employment duties as an ECCAT on the same day, August 18, 2014. Neither the parties nor the appendix record submitted in connection with this case specify which level ECCAT class title each Grievant held upon becoming an ECCAT or what level ECCAT class title they hold today.[9]

In early 2018, the Webster BOE, anticipating that it may have to reduce the number of ECCATs it employed, decided to calculate the ECCAT employees' seniority

---

[9] Grievant Donnis Davis testified at the Level Three hearing before the West Virginia Public Employee's Grievance Board that, in addition to meeting the requirements for ECCAT authorization, she also was eligible to retire by 2020. Thus, she presumably was granted an ECCAT II class title on that basis. *See* note 8 *supra* and the accompanying text. However, the record fails to indicate whether she met the requirements for, or held, an ECCAT III class title.

rankings. In doing so, the Webster BOE realized that the Grievants, who all began their ECCAT jobs on August 18, 2014, all had the same amount of ECCAT seniority. Accordingly, the Webster BOE applied West Virginia Code section 18A-4-8g(i) (eff. 2007),[10] and, on February 21, 2018, conducted a random drawing to assign an ECCAT

[10]The random selection process is to be carried out as follows:

(i) If two or more service personnel accumulate identical seniority, the priority shall be determined by a random selection system established by the service personnel and approved by the county board.

(1) A board shall conduct the random selection within thirty days of the time the service personnel establish an identical seniority date. All service personnel with an identical seniority date within the same class title or classification category shall participate in the random selection.

(2) As long as the affected employees hold identical seniority within the same classification category, the initial random selection conducted by the board shall be permanent for the duration of the employment within the same classification category of the employees by the board. This random selection priority applies to the filling of vacancies and to the reduction in force of school service personnel.

(3) If any other service person subsequently acquires seniority identical to the employees involved in the original random selection, a second random selection shall be held within thirty days to determine the seniority ranking of the new employee within the group.

(A) The priority between the employees who participated in the original random selection remains the same.

(B) The second random selection is performed by placing numbered pieces of paper equal to the number of employees with identical seniority in a container. Any service

7

seniority ranking to each Grievant and to other ECCAT employees who are not parties to this appeal.[11]   As a result of this random drawing, the ECCAT employee with the most seniority in the class title of Aide is not the employee with the most seniority in the class title of ECCAT.  The Grievants' respective seniority rankings for both the Aide class title and the ECCAT class title are reflected in the following table:

| Name | Aide Rank | ECCAT Rank |
| --- | --- | --- |
| Audrey Flanagan | 1st | 4th |
| Donnis Davis | 2nd | 6th |
| Samantha McCourt | 7th | 8th |
| Karen Holcomb | 8th | 5th |

person who was not involved in the original random selection shall draw a number from the container which will determine his or her seniority within the group as a whole.

(C) This process will be repeated if any additional service person subsequently acquires identical seniority.

(D) The same process shall be used if any additional service person is subsequently discovered to have the same seniority as the original group of employees but who did not participate in the original random selection due to oversight or mistake.

W. Va. Code § 18A-4-8g(i) (eff. 2007).  Before the West Virginia Public Employee's Grievance Board, the Grievants argued that the Webster BOE could not conduct a random selection because it had failed to comply with the thirty-day time frame set out in West Virginia Code section 18A-4-8g(i)(1).  The Grievance Board rejected this argument, and it was not addressed by the circuit court.  Similarly, that issue is not before us in connection with this appeal.

[11] Other ECCAT employees of the Webster BOE who also began their ECCAT jobs on August 18, 2014, were included in the random drawing, but they are not parties to this appeal and we, therefore, omit the facts pertaining to them.

To date, no reduction in force has occurred, but the Grievants nevertheless each filed a Level One grievance on March 7, 2018, challenging the Webster BOE's use of West Virginia Code section 18A-4-8g(i) to randomly assign their ECCAT seniority ranking instead of relying on their Aide seniority ranking. The grievances were consolidated at Level One and, following a hearing, the grievances were denied. Grievants then filed Level Two appeals and mediation was conducted but failed. Thereafter, Grievants appealed to Level Three. Following a Level Three hearing before the West Virginia Public Employees Grievance Board ("Grievance Board"), the grievance was again denied. In its Level Three decision, the Grievance Board found that the Grievants failed to meet their burden of proof[12] to establish that the Webster BOE erred by failing to apply West Virginia Code section 18A-4-8b(d)(2)(C) (eff. 2016),[13] to rank their ECCAT seniority based upon their Aide Seniority. The Grievance Board instead relied upon this Court's decision in *Mayle v. Barbour County Board of Education*, No. 17-0204, 2018 WL 317375 (W. Va. Jan. 8, 2018) (memorandum decision), to conclude that ECCAT seniority accrues independently from Aide seniority. The Grievants next filed a petition for appeal in the Circuit Court of Kanawha County where, by order entered on October 10, 2019, the

---

[12] *See* 156 W. Va. C.S.R. § 1-3.1 ("The grievant bears the burden of proving the grievant's case by a preponderance of the evidence, except in disciplinary matters, where the burden is on the employer to prove that the action taken was justified . . . .").

[13] As will be discussed in our analysis of this appeal, West Virginia Code section 18A-4-8b(d)(2)(C) is contained within a section of the Code addressing seniority rights with respect to promotions and provides that "[p]araprofessional, autism mentor, early classroom assistant teacher and braille or sign support specialist class titles are included in the same classification category as aides[.]"

9

circuit court reversed and vacated the Grievance Board's decision. The circuit court found the *Mayle* decision to be distinguishable and, further, determined that the issue was properly resolved in the Grievants' favor by application of West Virginia Code section 18A-4-8b(d)(2)(C). This appeal by the Webster BOE followed.

## II.

## STANDARD OF REVIEW

It is well established that, "[w]hen reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. pt. 1, *Martin v. Barbour Cty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011). The standard to be applied by the circuit court, which, by extension, also is applied by this Court, is set out in West Virginia Code section 6C-2-5 as follows:

> (b) A party may appeal the decision of the administrative law judge on the grounds that the decision:
>
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
>
> (2) Exceeds the administrative law judge's statutory authority;
>
> (3) Is the result of fraud or deceit;
>
> (4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 6C-2-5(b) (eff. 2007).  In general,

> [g]rievance rulings involve a combination of both deferential and plenary review.  Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations.  Credibility determinations made by an administrative law judge are similarly entitled to deference.  Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

Syl. pt. 1, *Cahill v. Mercer Cty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000).  In this appeal, there is no dispute over the facts.  Instead, we are asked only to address a question of law, *i.e.*, how school service employees in the class title ECCAT are ranked for purposes of a reduction in force when they all began working as an ECCAT on the same day.  Thus, our review of this issue affords no deference to the decision of the lower tribunal.  "Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo."  Syl. pt. 1, in part, *id.  See also* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").  With due regard for this guidance, we proceed to address, anew, the issue raised.

11

Resolving the issue raised in this appeal requires us to delve into diffuse and complicated Code provisions, and the answer is neither simple nor straightforward. Each of the parties to this appeal relies on a distinct and conflicting statutory provision to answer the question of how an ECCAT's seniority is ranked for purposes of a reduction in force. The Webster BOE argues that this appeal is properly resolved by West Virginia Code section 18A-4-8g(d) (eff. 2007). The Grievants, on the other hand, direct this Court's attention to West Virginia Code section 18A-4-8b(d)(2)(C). In addition, our research has revealed a third statute, West Virginia Code section 18A-4-8(u) (eff. 2015), that is applicable to calculating seniority for a reduction in force involving ECCAT personnel who hold a multiclassification status. We will address each of these statutes in turn.

Before examining these statutes, though, we revisit some general principles of statutory construction that will guide our analysis. At the outset, we reiterate the oft repeated principle that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). Accordingly, "[a] statutory provision [that] is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951). Conversely, "[a] statute that is ambiguous must be

construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414

S.E.2d 454 (1992). With these canons as a general guide, we address the pertinent statutes.

### A. West Virginia Code Section 18A-4-8g(d)

As noted above, the Webster BOE argues that West Virginia Code

section 18A-4-8g(d) should have been applied by the circuit court to resolve the instant

matter, and, because the circuit court failed to do so, its decision was erroneous. We

agree.[14]

West Virginia Code section 18A-4-8g was last amended in 2007. It is

conspicuously titled "Determination of seniority for service personnel," which indicates

that it directly pertains to the issue at hand, *i.e.*, how to determine seniority of ECCAT

service personnel. Under subsection (d),

> [f]or all purposes including the filling of vacancies and
> reduction in force, seniority shall be accumulated within
> particular classification categories of employment as those
> classification categories are referred to in section eight-e
> [§ 18A-4-8e] of this article.

---

[14] While we agree with the Webster BOE's position with respect to the proper interpretation of section 18A-4-8g(d), we disagree with its reliance on this Court's decision in *Mayle v. Barbour County Board of Education*, No. 17-0204, 2018 WL 317375 (Jan. 8, 2018) (memorandum decision). While the *Mayle* Court did rely on West Virginia Code sections 18-4-8g(d) and 18A-4-8e to conclude that "ECCAT seniority accrues independently of aide seniority," it did so in the context of addressing whether an Aide who did not possess ECCAT certification was entitled to an ECCAT position based solely upon her superior Aide seniority. *Mayle* at *3. *Mayle* simply has no application in the context of a reduction in force.

W. Va. Code § 18A-4-8g(d). Breaking this section down, it first clearly expresses, in plain language, that it applies "[f]or all purposes including . . . reduction in force," *id.*, which makes its application to the determination of the seniority of ECCATs for the purposes of a reduction in force unquestionable. It goes on to plainly express that "seniority *shall* be accumulated within particular classification categories of employment as those classification categories are referred to in section eight-e [§ 18A-4-8e] of this article." *Id.* (emphasis added). Use of the term "shall" signals that this provision is mandatory. "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syl. pt. 1, *Nelson v. W. Va. Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982). Furthermore, this section plainly requires that seniority "be accumulated *within particular* classification categories of employment" as they are referred to in W. Va. Code § 18A-4-8e. W. Va. Code § 18A-4-8g(d) (emphasis added). "Generally[,] the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use." Syl. pt. 4, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353 (1959). The ordinary meaning of the word "particular" in the context here used is "of or belonging to a single, definite person, part, group, or thing; not general; distinct" and "apart from any other; regarded separately; specific." *Particular* Webster's New World College Dictionary (5th ed. 2016). *See also Particular* XI The Oxford English Dictionary (2d ed. 1989) (defining "particular," in part, as "pertaining or relating to a single definite thing or person, or set of

14

things or persons, as distinguished from others; of or belonging to some one thing (etc.) and not to any other, or to some and not to all"). Clearly then, West Virginia Code section 18A-4-8g(d) requires seniority to be accumulated within the separate classifications referred to in West Virginia Code section 18A-4-8e (eff. 2019).[15] Accordingly, we turn to West Virginia Code section 18A-4-8e to identify the particular classifications within which seniority is to be accumulated.

West Virginia Code section 18A-4-8e is titled "Competency testing for service personnel; and recertification testing for bus operators," and it discusses classification categories in the context of competency tests. Pursuant to West Virginia Code section 18A-4-8e(a),

> [t]he state board shall develop and make available competency tests for *all of the classification titles defined in section eight* [§ 18A-4-8] of this article *and listed in section eight-a* [§ 18A-4-8a] of this article for service personnel . . . . Each classification title defined and listed is considered a separate classification category of employment for service personnel and has a separate competency test, except for those class titles having Roman numeral designations, which are considered a single classification of employment and have a single competency test.

---

[15] Although the 2016 version of section 18A-4-8e was in effect when the Grievants filed their grievances, the relevant portions of the 2019 statute are identical to the 2016 version. Therefore, we will refer to the most recent version of section 18A-4-8e.

W. Va. Code § 18A-4-8e(a) (eff. 2019) (emphasis added). This paragraph then lists three

separate groups that are expressly designated to have the same respective class title, yet

none of these groups include Aides or ECCATs:

> (1) The cafeteria manager class title is included in the same classification category as cooks and has the same competency test.

> (2) The executive secretary class title is included in the same classification category as secretaries and has the same competency test.

> (3) The classification titles of chief mechanic, mechanic and assistant mechanic are included in one classification title and have the same competency test.

*Id*. The Legislature has further clarified that "[t]he requirements of this section [§ 18A-4-8e] do not alter the definitions of class titles as provided in section eight [§ 18A-4-8] of this article or the procedure and requirements of section eight-b [§ 18A-4-8b] of this article." W. Va. Code § 18A-4-8e(i).[16]


Consequently, under West Virginia Code section 18A-4-8e(a), the class titles defined in West Virginia Code section 18A-4-8, which also are listed along with their respective pay grades in West Virginia Code section 18A-4-8a(a)(2) (eff. 2019),[17] are utilized, and "[e]ach classification title defined and listed is considered a separate

---

[16] This provision also is included in the 2016 version of section 18A-4-8e(i).

[17] *See* note 18 infra for an explanation of why we cite to the 2019 version of this statute.

classification category of employment for service personnel," except that "class titles having Roman numeral designations . . . are considered a single classification of employment." W. Va. Code § 18A-4-8e(a).

West Virginia Code section 18A-4-8 provides that "[t]he purpose of this section is to establish an employment term and class titles for service personnel." W. Va. Code § 18A-4-8(a) (eff. 2015). The various class titles relevant to this case are defined as follows:

> (i) The column heads of the state minimum pay scale and class titles, set forth in section eight-a of this article [§ 18A-4-8a], are defined as follows:
> . . . .
>
> (3) "Class title" means the name of the position or job held by a service person;
>
> . . . .
>
> (8) "Aide I" means a person selected and trained for a teacher-aide classification such as monitor aide, clerical aide, classroom aide or general aide;
>
> (9) "Aide II" means a service person referred to in the "Aide I" classification who has completed a training program approved by the state board, or who holds a high school diploma or has received a general educational development certificate. Only a person classified in an Aide II class title may be employed as an aide in any special education program;
>
> (10) "Aide III" means a service person referred to in the "Aide I" classification who holds a high school diploma or a general educational development certificate; and

(A) Has completed six semester hours of college credit at an institution of higher education; or

(B) Is employed as an aide in a special education program and has one year's [sic] experience as an aide in special education;

(11) "Aide IV" means a service person referred to in the "Aide I" classification who holds a high school diploma or a general educational development certificate; and

(A) Has completed eighteen hours of State Board-approved college credit at a regionally accredited institution of higher education, or

(B) Has completed fifteen hours of State Board-approved college credit at a regionally accredited institution of higher education; and has successfully completed an in-service training program determined by the State Board to be the equivalent of three hours of college credit;

. . . .

(36) "Early Childhood Classroom Assistant Teacher I" means a person who does not possess minimum requirements for the permanent authorization requirements, but is enrolled in and pursuing requirements;

(37) "Early Childhood Classroom Assistant Teacher II" means a person who has completed the minimum requirements for a state-awarded certificate for early childhood classroom assistant teachers as determined by the state Board;

(38) "Early Childhood Classroom Assistant Teacher III" means a person who has completed permanent authorization requirements, as well as additional requirements comparable to current paraprofessional certificate[.]

18

W. Va. Code § 18A-4-8(i). West Virginia Code section 18A-4-8a(a)(2)[18] lists these class titles in the same manner.

According to the foregoing lists then, since the Aide classification and the ECCAT classification each has roman numeral designations within its class title, the four Aide classifications are considered a single classification, and, similarly, the three ECCAT classifications are a single classification; however, Aides and ECCATs clearly are treated as separate, distinct classifications. Accordingly, we now hold that, under West Virginia Code sections 18A-4-8g(d) (eff. 2007), 18A-4-8(i) (eff. 2015), and 18A-4-8a(2) (eff. 2019), the school service personnel classifications of Aide and Early Childhood Classroom Assistant Teacher (ECCAT) accrue seniority independently from each other for purposes of a reduction in force. As such, only the seniority for the specific classification subject to a reduction in force shall be considered in ranking the seniority of the affected personnel. Applying this holding, we find that the circuit court's decision is contrary to the law insofar

_____

[18] The Legislature has expressly made West Virginia Code section 18A-4-8a (eff. 2019) applicable to the 2018-2019 and 2019-2020 school years. We note, however, that earlier versions of this statute that include both Aide and ECCAT classifications also list them separately. The earlier versions do, however, differ in how they refer to the three ECCAT classifications. Versions of section 18A-4-8a enacted in 2013 and 2014 refer to the ECCAT classifications as "Early Childhood Classroom Assistant Teacher - Temporary Authorization," "Early Childhood Classroom Assistant Teacher - Permanent Authorization," and "Early Childhood Classroom Assistant Teacher - Paraprofessional Certificate," while versions enacted in 2015 and 2018 refer to ECCAT I, ECCAT II, and ECCAT III. Because the significance of this statute is the fact that it lists Aides and ECCATs separately, and each version does so, we cite to the most recent version of this statute.

as it failed to apply the plain provisions of West Virginia Code sections 18A-4-8g(d) in determining how the Grievants' seniority should be determined. *See* W. Va. Code § 6C-2-5(b) (providing grounds upon which a grievance decision may be reversed).

### B. West Virginia Code Section 18A-4-8b(d)(2)(C)

Turning to the Grievants' argument, they contend that the circuit court correctly determined that West Virginia Code section 18A-4-8b(d) requires that their Aide seniority be used to calculate ECCAT seniority. We disagree. Section 18A-4-8b is titled "Seniority rights for school service personnel," and it addresses a variety of topics. Although section 18A-4-8b(d)(2)(C) does, in fact, contain a provision stating ECCAT titles are included in the same classification category as Aides, this provision does not apply in the current context because section 18A-4-8b(d) explicitly addresses promotions, not reductions in force, and it says nothing about calculating seniority:

> (d) A promotion means any change in employment that the service person considers to improve his or her working circumstance within the classification category of employment.
>
> (1) A promotion includes a transfer to another classification category or place of employment if the position is not filled by an employee who holds a title within that classification category of employment.
>
> (2) Each class title listed in section eight [§ 18A-4-8] of this article is considered a separate classification category of employment for service personnel, except for those class titles having Roman numeral designations, which are considered a single classification of employment:

20

. . . .

> (C) Paraprofessional, autism mentor, early classroom
> assistant teacher and braille or sign support specialist class
> titles are included in the same classification category as aides;

W. Va. Code § 18A-4-8b(d).[19]  Because section 18A-4-8b(d) mentions only promotions, we may infer that the Legislature purposefully omitted reductions in force from this paragraph.  *See* Syl. pt. 3, *Manchin v. Dunfee*, 174 W. Va. 532, 327 S.E.2d 710 (1984) ("In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies.").

Moreover, section 18A-4-8b(d)(2)(C) may not be read in isolation.  It is axiomatic that,

> "[i]n the construction of a legislative enactment, the intention of the legislature is to be determined, not from any single part, provision, section, sentence, phrase or word, but rather from a general consideration of the act or statute in its entirety." Syllabus Point 1, *Parkins v. Londeree*, 146 W. Va. 1051, 124 S.E.2d 471 (1962).

Syl. pt. 5, *Miller v. Wood*, 229 W. Va. 545, 729 S.E.2d 867 (2012).  Looking at the entirety of section 18A-4-8b, it becomes evident that the Legislature intended to treat promotions differently from reductions in force.  This is demonstrated by the fact that, while

---

[19] We note that the Grievance Board, in its written decision of the Level Three grievance, observed that, "West Virginia Code § 18A-4-8b(d)(2)(C) places Paraprofessionals and Autism Mentors classifications in the Aide classification.  The Board has consistently set a separate seniority date for those classifications apart from the seniority date for the Aide classifications."

section 18A-4-8b(d) is limited in its scope to promotions, other subparagraphs of section 18A-4-8b specifically address reductions in force and the determination of seniority. Those provisions are found in sections 18A-4-8b(h), (i), & (j). Under section 18A-4-8b(h):

> (h) All decisions by county boards concerning reduction in work force of service personnel shall be made on the basis of seniority, as provided in this section.

Paragraph (h) incorporates the word "shall" in requiring that "[a]ll decisions by county boards concerning reduction in work force of service personnel *shall be made on the basis of seniority, as provided in this section*" (emphasis added); thus, this requirement is mandatory. *See* Syl. pt. 1, *Nelson*, 171 W. Va. 445, 300 S.E.2d 86 ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation."). The method of determining seniority is then set out in paragraph (i) as follows:

> (i) The seniority of a service person is determined on the basis of the length of time the employee has been employed by the county board within a particular job classification. For the purpose of establishing seniority for a preferred recall list as provided in this section, a service person who has been employed in one or more classifications retains the seniority accrued in each previous classification.

W. Va. Code § 18A-4-8b(i). This paragraph plainly requires that "[t]he seniority of a service person is determined on the basis of the length of time the employee has been employed by the county board *within a particular job classification.*" *Id.* (emphasis added). Because this paragraph is plain, we are constrained to apply, rather than construe,

22

its terms. *See* Syl. pt. 2, *Epperly*, 135 W. Va. 877, 65 S.E.2d 488 ("A statutory provision [that] is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Moreover, as we observed above in our discussion of the term "particular" in connection with our analysis of West Virginia Code section 18A-4-8g(d), the common ordinary meaning of that term[20] is to belong to a single, definite part or group.[21] It follows, therefore, that the seniority of an ECCAT service person is determined based upon the length of time that person has been employed by the county board in the single, definite class title of ECCAT. This conclusion is further supported by section 18A-4-8b(j), which describes how an employee is to be selected for release if a reduction in force becomes necessary. West Virginia Code section 18A-4-8b(j) reiterates that the reduction in a *particular* job classification is to be made by releasing the employee with the least amount of seniority "within that classification":

> (j) If a county board is required to reduce the number of service personnel *within a particular job classification*, the following conditions apply:

---

[20] *See* Syl. pt. 4, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W. Va. 137, 107 S.E.2d 353(1959) ("Generally[,] the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use.").

[21] *See Particular* Webster's New World College Dictionary (5th ed. 2016) (defining "particular" in relevant part as "of or belonging to a single, definite person, part, group, or thing; not general; distinct" and "apart from any other; regarded separately; specific."); *Particular* XI The Oxford English Dictionary (2d ed. 1989) (defining "particular," in part, as "pertaining or relating to a single definite thing or person, or set of things or persons, as distinguished from others; of or belonging to some one thing (etc.) and not to any other, or to some and not to all").

23

(1) The employee with the least amount of seniority *within that classification* or grades of classification is properly released and employed in a different grade of that classification if there is a job vacancy;

(2) If there is no job vacancy for employment within that classification or grades of classification, the service person is employed in any other job classification which he or she previously held with the county board if there is a vacancy and retains any seniority accrued in the job classification or grade of classification.

W. Va. Code § 8A-4-8b(j) (emphasis added). In this respect, section 18A-4-8b is in harmony with the treatment given a reduction in force under section 18A-4-8g(d), which we addressed above.[22] Therefore, we now hold that under West Virginia Code sections 18A-4-8b(h), (i), & (j) (eff. 2016), the school service personnel classifications of Aide and Early Childhood Classroom Assistant Teacher (ECCAT) accrue seniority independently from each other for purposes of a reduction in force. As such, only the seniority for the specific classification subject to a reduction in force shall be considered in ranking the seniority of the affected personnel.

---

[22] Furthermore, because West Virginia Code sections 18A-4-8b(h), (i), & (j) expressly address a reduction in force and the determination of seniority, and they do not combine ECCATs and Aides in the same class title, in the current context they are given precedence over West Virginia Code section 18A-4-8b(d)(2)(C), which addresses neither a reduction in force nor the determination of seniority in placing Aides and ECCATs in the same class title. "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. pt. 1, *UMWA by Trumka v. Kingdon*, 174 W. Va. 330, 325 S.E.2d 120 (1984).

Based upon the foregoing analysis, we find the circuit court's decision is contrary to the law insofar as it improperly relied upon West Virginia Code section 18A-4-8b(d)(2)(C). *See* W. Va. Code § 6C-2-5(b) (providing grounds upon which a grievance decision may be reversed).

## C. Multiclassification Status Under West Virginia Code Section 18A-4-8(u)

Although not acknowledged by the parties to this appeal, there is one additional provision related to calculating the seniority of a service person holding both Aide and ECCAT class titles, which applies to calculating the seniority for purposes of a reduction in force of school service personnel who hold a multiclassification status:

> (*l*) A school service person who holds a multiclassification title accrues seniority in each classification category of employment that the employee holds and is considered an employee of each classification category contained within his or her multiclassification title. *A multiclassified service person is subject to reduction in force in any category of employment contained within his or her multiclassification title, based upon the seniority accumulated within that category of employment.* If a multiclassified service person is subject to a reduction in force in one classification category, the service person retains employment in any of the other classification categories that he or she holds within his or her multiclassification title. In that case, the county board shall delete the appropriate classification title or classification category from the contract of the multiclassified employee.

W. Va. Code § 18A-4-8g(*l*) (eff. 2007) (emphasis added). This language plainly directs that seniority for only the particular classification being reduced shall be considered in connection with a reduction in force involving a multiclassified service person. *See* Syl.

25

pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 ("A statutory provision [that] is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Furthermore, this Court has previously considered West Virginia Code section 18A-4-8g(*l*), though mis-citing it as section 18A-4-8g(i), and similarly applied the plain language of that section:

> Pursuant to W. Va. Code § 18A-4-8g[(*l*) (eff. 2007)], multiclassified school service personnel do not belong to a separate or unique classification category, but rather are employees of each classification category contained within their respective multi-classification titles. *Under the statute, a multiclassified employee accrues seniority in each of the several classification categories composing his or her multiclassification title, and, correspondingly, is subject to a reduction in force in these individual job categories on the basis of the respective seniority accumulated in each.* In all instances where an employee has seniority in a particular job category—whether that employee is multiclassified or holds only a single job classification—such employee will be entitled to preference during a reduction in force in that category. In the event a multiclassified employee is subject to a reduction in force in one or more, but less than all, of the categories composing his or her multiclassification title, such employee remains in the employ of the county board of education with those categories that are subject to the reduction in force being deleted from the [contract of the multiclassified employee].

Syl. pt. 5, *Taylor-Hurley v. Mingo Cty. Bd. of Educ.*, 209 W. Va. 780, 551 S.E.2d 702 (2001) (emphasis added).[23]

---

[23] The last sentence of Syllabus point 5 of *Taylor-Hurley v. Mingo County Board of Education*, 209 W. Va. 780, 551 S.E.2d 702 (2001), actually states that,

> [i]n the event a multiclassified employee is subject to a reduction in force in one or more, but less than all, of the categories composing his or her multiclassification title, such

26

Having determined that the seniority of a multiclassified school service person subject to a reduction in force in a particular class title is ranked only on the basis of the seniority accumulated in the class title to be reduced, the next question we must answer for purposes of the instant appeal is whether a school service person who holds both an Aide class title and an ECCAT class title holds a multiclassification title.

This question is answered by West Virginia Code section 18A-4-8(u), which states that "[a] person who has held or holds an aide title and becomes employed as an Early Childhood Classroom Assistant Teacher [ECCAT] *shall* hold a multiclassification status that includes aide and/or paraprofessional titles in accordance with section eight-b

---

employee remains in the employ of the county board of education with those categories that are subject to the reduction in force being deleted from the employee's *multiclassification title*.

(Emphasis added). This reference to deleting classification categories from an employee's multiclassification title is incorrect. West Virginia Code Section 18A-4-8g(*l*), upon which Syllabus point 5 of *Taylor-Hurley* is based, actually instructs that the classification *title or category* be deleted from a multiclassified employee's *contract*:

If a multiclassified service person is subject to a reduction in force in one classification category, the service person retains employment in any of the other classification categories that he or she holds within his or her multiclassification title. In that case, the county board shall delete the appropriate classification title or classification category *from the contract of the multiclassified employee*.

W. Va. Code § 18A-4-8g(*l*) (eff. 2007) (emphasis added). Accordingly, in quoting Syllabus point 5 of *Taylor-Hurley*, we have corrected this error.

27

of this article [§ 18A-4-8b].” (Emphasis added). The use of the word “shall” in this provision plainly demonstrates that its application is mandatory. *See* Syl. pt. 1, *Nelson*, 171 W. Va. 445, 300 S.E.2d 86 (“It is well established that the word ‘shall,’ in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.”). The language stating that the multiclassification status includes “aide *and/or* paraprofessional titles” simply acknowledges that such an employee may also hold a paraprofessional title.[24] Thus, the plain language of this statute

---

[24] The Paraprofessional class title is defined as follows:

> (71) “Paraprofessional” means a person certified pursuant to section two-a [§ 18A-3-2a], article three of this chapter to perform duties in a support capacity including, but not limited to, facilitating in the instruction and direct or indirect supervision of students under the direction of a principal, a teacher or another designated professional educator.

W. Va. Code § 18A-4-8(i)(71). According to West Virginia Code section 18A-3-2a(d) (eff. 2017),

> (d) **Paraprofessional certificate.** – A paraprofessional certificate may be issued to a person who meets the following conditions:
>
> (1) Has completed thirty-six semester hours of post-secondary education or its equivalent in subjects directly related to performance of the job, all approved by the state board; and
>
> (2) Demonstrates the proficiencies to perform duties as required of a paraprofessional as defined in section eight [§ 18A-4-8], article four of this chapter.

directs that a person who has held or holds an Aide title and becomes employed as an ECCAT shall hold a multiclassification status. Because such employees are mandatorily deemed multiclassification status employees, the method of calculating their seniority rank for purposes of a reduction in force is governed by West Virginia Code section 18A-4-8g(*l*) and Syllabus point 5 of *Taylor-Hurley*. Accordingly, we now hold that, a school service employee who has held or holds an Aide title and becomes employed as an Early Childhood Classroom Assistant Teacher (ECCAT) shall hold a multiclassification status. As a multiclassification status employee, the method of calculating such an employee's seniority rank for purposes of a reduction in force is governed by West Virginia Code section 18A-4-8g(*l*) (eff. 2007) and Syllabus point 3 of this opinion, which quotes, with corrections, Syllabus point 5 of *Taylor-Hurley v. Mingo County Board of Education*, 209 W. Va. 780, 551 S.E.2d 702 (2001). Under these authorities, seniority for the Aide and Early Childhood Classroom Assistant Teacher (ECCAT) classification titles accrue independently from each other.

West Virginia Code section 18A-4-8(u) additionally provides that the multiclassification status be held "in accordance with section eight-b [§ 18A-4-8b] of this article." To the extent that section 18A-4-8b addresses a variety of topics, we find this reference somewhat ambiguous and, therefore, we will endeavor to construe it and give it effect. *See* Syl. pt. 4, *Young v. Apogee Coal Co., LLC*, 232 W. Va. 554, 753 S.E.2d 52 (2013) ("A cardinal rule of statutory construction is that significance and effect must, if

29

possible, be given to every section, clause, word or part of the statute." (citations omitted));

Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 ("A statute that is ambiguous must be construed before it can be applied.").

Section 18A-4-8b addresses seniority rights for school service personnel and has various subsections addressing topics such as qualifications,[25] promotions,[26] extra duty assignments,[27] and reductions in force[28] to name a few. In referring to section 18A-4-8b, section 18A-4-8(u) fails to identify any specific subsection; therefore, the plain meaning of the reference must be to the entirety of section 18A-4-8b. To give meaning to this general reference then, the proper application of section 18A-4-8b to the multiclassified service personnel established in section 18A-4-8(u) necessarily depends upon the particular topic being addressed. In the context of the instant matter, a reduction in force, the proper reference would be to sections 18A-4-8b(h), (i), and (j), which, as we hold above, direct that the classifications of Aide and ECCAT accrue seniority independently from each other for purposes of a reduction in force. This alternate method of determining seniority for a multiclassification employee is in harmony with West Virginia Code

---

[25] *See* W. Va. Code § 18A-4-8b(b).

[26] *See* W. Va. Code § 18A-4-8b(d).

[27] *See* W. Va. Code § 18A-4-8b(f).

[28] See W. Va. Code §§ 18A-4-8b(h) & (j).

section 18A-4-8g(*l*) and Syllabus point 5 of *Taylor-Hurley*, under which "a multiclassified employee accrues seniority in each of the several classification categories composing his or her multiclassification title, and, correspondingly, is subject to a reduction in force in these individual job categories on the basis of the respective seniority accumulated in each[,]" 209 W. Va. 780, 551 S.E.2d 702, as well as our new syllabus point recognizing the same.

## IV.

## CONCLUSION

This opinion demonstrates that, no matter which statutory path is analyzed, the result is the same: the Legislature intended that seniority for Aide and ECCAT class titles accrue independently from each other for purposes of a reduction in force, regardless of which level of ECCAT classification is held, and regardless of whether an ECCAT employee qualifies for a multiclassification status. Thus, because all of the Grievants have identical ECCAT seniority, the Webster BOE properly conducted a random drawing in accordance with West Virginia Code section 18A-4-8g(i) to determine their respective rank for an anticipated reduction in force. For this reason, the Circuit Court of Kanawha County's order of October 10, 2019, finding that Aide seniority is used to determine the ranks of service personnel subject to a reduction of force in the ECCAT class title, is

31

contrary to the law and is reversed.  This case is remanded for entry of an order consistent with this opinion.

Reversed and remanded.