551 S.E.2d 362

**Christina NAPIER, Plaintiff Below, Appellant**

v.

**LINCOLN COUNTY BOARD OF EDUCATION, Defendant Below, Appellee**

No. 28486.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 7, 2001.

Decided July 2, 2001.

Jason A. Poling, Esq., Tyson & Tyson, Huntington, West Virginia, Attorneys for Appellant.

James W. Gabehart, Esq., Hamlin, West Virginia, Attorneys for Appellee.

McGRAW, Chief Justice:

The appellant, Christina Napier, challenges the final order of the Circuit Court of Lincoln County, which upheld a determination by an Administrative Law Judge ("ALJ") of the Education and State Employees Grievance Board ("Grievance Board") that it was without jurisdiction to hear Ms. Napier's grievance because the federally-funded position which she had sought, but failed to obtain, was not that of an "employee" of the appellee Lincoln County Board of Education ("Board of Education"). We reverse, finding that the ALJ erred as a matter of law in concluding that the post for which Ms. Napier applied did not fall under the authority of the Board of Education.

# I.

## BACKGROUND

In 1998, the Board of Education applied for and obtained a $334,197 grant from the United States Department of Education pursuant to the 21st Century Community Learning Centers Act, 20 U.S.C. §§ 8241–8247 (1994) (the "Learning Centers Act"). Under the Learning Centers Act, grants are made to elementary and secondary schools, or consortia of such schools, for purposes of establishing and maintaining so-called "community learning centers," 20 U.S.C. § 8245, which are defined as

> entit[ies] within a public elementary or secondary school building that—
>
> (1) provide[ ] educational, recreational, health, and social service programs for residents of all ages within a local community; and
>
> (2) [are] operated by a local educational agency in conjunction with local governmental agencies, businesses, vocational education programs, institutions of higher education, community colleges, and cultural, recreational, and other community and human service entities.

20 U.S.C. § 8246. The Learning Centers Act further requires that such community learning centers offer at least four out of thirteen designated activities. 20 U.S.C. § 8245.[1]

Pursuant to these basic requirements, the Board of Education has used its grant to fund a program known as "West Virginia Dreams," which aims primarily to provide after-school and summer programs involving

---

1. Section 8245 provides:
 Grants awarded under this part may be used to plan, implement, or expand community learning centers which include not less than four of the following activities:
 (1) Literacy education programs.
 (2) Senior citizen programs.
 (3) Children's day care services.
 (4) Integrated education, health, social service, recreational, or cultural programs.
 (5) Summer and weekend school programs in conjunction with recreational programs.
 (6) Nutrition and health programs.
 (7) Expanded library service hours to serve community needs.
 (8) Telecommunications and technology education programs for individuals of all ages.
 (9) Parenting skills education programs.
 (10) Support and training for child day care providers.
 (11) Employment counseling, training and placement.
 (12) Services for individuals who leave school before graduating from secondary school, regardless of the age of such individual.
 (13) Services for individuals with disabilities.
 20 U.S.C. § 8245.

tutoring, counseling, and recreational activities. The West Virginia Dreams program involves a collaborative effort between the Board of Education and Step By Step, Inc., a non-profit community organization based in Lincoln County. Community learning centers have been established under the grant at five locations: Atenville Elementary School; Ferrellsburg Elementary School; Harts High School; the Big Ugly Community Center, which is located in a former elementary school; and the Midkiff Community Center, also a former elementary school. According to the ALJ, the management of the program is directly overseen by a three-person "Management Team," comprised of the principals of the Atenville Elementary and Harts High Schools, and Michael Tierney, the director of Step By Step.[2]

Shortly after the Board of Education was notified of the grant award, no less than 16 positions connected with the program were posted in the Board's vacancy bulletin. The bulletin specifically noted that these positions were "21st Century Community Learning positions," and instructed applicants to forward their applications directly to Step By Step. The job descriptions of each of the positions described the following selection process:

1. Letter of application/resume to Step By Step @ Big Ugly Community Center.
2. Recommendation by the Management Team.
3. Recommendation by the Superintendent.
4. Approval by Board of Education as provided by 21st Century Grant.

These positions were apparently also advertised in the Charleston Gazette, as well as the Logan Banner and other, more local, newspapers.

Ms. Napier timely applied for a position as a "site coordinator" at any one of the community learning center locations, which would have entailed working approximately ten hours each week at such tasks as scheduling events and personnel, ordering supplies, and conducting after-school programs. The Management Team failed to recommend Ms. Napier for any of the available site coordinator positions, and the Board of Education approved the Management Team's recommended candidates at its meeting on February 1, 1999.

Shortly thereafter, on February 5, 1999, Ms. Napier filed a grievance alleging that the site coordinator positions had been filled in violation of W. Va.Code § 18A–4–7a (1993), which governs the hiring of professional employees.[3] The grievance was denied at Level I, and was thereafter subject to a Level II hearing on March 9, 1999. At that hearing, the Board of Education moved to dismiss the grievance for want of jurisdiction under W. Va.Code §§ 18–29–1 to –11, arguing that the site coordinator position was not that of an employee of the Board. The motion to dismiss on jurisdictional grounds was granted, and, after the parties waived a hearing at Level III, Ms. Napier filed her Level IV appeal with the Grievance Board on March 18, 1999.

At Level IV, the Board of Education again moved to dismiss the grievance, with both parties agreeing to resolve this jurisdictional issue prior to an evidentiary hearing. On July 15, 1999, the ALJ for the Grievance Board granted the motion to dismiss. The ALJ premised her ruling on well-established legal principles governing the existence of a employer-employee relationship,[4] and reasoned that since it was undisputed that those working in the federally-funded community

---

**2.** The grant application submitted to federal authorities indicated that "each member of our management team represents a particular member of the consortium [of schools] .... The team will meet on a monthly basis and include[ ] the principals or directors of each school/center ...." This suggests that the Management Team is composed of five persons, rather than the three expressly mentioned in the ALJ's order.

**3.** The record is silent as to the specific basis for Ms. Napier's allegation that the Board of Education's failure to appoint her to the site manager position violates § 18A–4–7a.

**4.** *E.g.,* syl. pt. 5, *Paxton v. Crabtree,* 184 W.Va. 237, 400 S.E.2d 245 (1990) ("There are four general factors which bear upon whether a master-servant relationship exists for purposes of the doctrine of *respondeat superior:* (1) Selection and engagement of the servant; (2) Payment of compensation; (3) Power of dismissal; and (4) Power of control. The first three factors are not essential to the existence of the relationship; the fourth, the power of control, is determinative."); *see also Atkinson v. County Comm'n of Wood County,* 200 W.Va. 380, 383, 489 S.E.2d 762, 765 (1997) ("The pivotal consideration in determin-

learning centers fell under the direct, day-to-day control of the Management Team, the site coordinator position in question did not involve employment by the Board of Education.[5]

Following the dismissal of her grievance at Level IV, Ms. Napier sought judicial review in the Circuit Court of Lincoln County pursuant to W. Va.Code § 18–29–7 (1985). By an order entered on April 13, 2000, the circuit court denied relief, and this appeal followed.

## II.

### STANDARD OF REVIEW

 This Court undertakes de novo review of action taken by a circuit court under

the judicial review provisions of W. Va.Code § 18–29–7, in that we are bound to employ the same standard as that which the statute imposes upon the lower courts. See Martin v. Randolph County Bd. of Educ., 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995) ("This Court reviews decisions of the circuit [court] under the same standard as that by which the circuit [court] reviews the decision of the ALJ."). In other words, we give no deference to the circuit court, but instead undertake to apply the criteria of § 18–29–7[6] directly to the findings and conclusions of the ALJ. Cf. Wheeling–Pittsburgh Steel Corp. v. Rowing, 205 W.Va. 286, 293, 517 S.E.2d 763, 770 (1999) (noting in context of Administra-

ing whether an individual is an employee of a given entity is whether the purported employer has the power of control over the individual.") (citing Woodall v. International Bhd. of Elec. Workers, Local 596, 192 W.Va. 673, 677, 453 S.E.2d 656, 660 (1994)).

5. The ALJ's dismissal order contained the following discussion:

In a similar circumstance involving a board of education and a position that was funded by an outside source, this Grievance Board found that, where the evidence of record established that the county board was responsible for posting the vacancy, interviewing the applicants, approving the Superintendent's recommended appointment, managing the employee's payroll and other employment-related paperwork, and supervising the incumbent employee during the period of appointment, the individual holding the position was a regular, part-time, temporary employee of the board, and thus, entitled to utilize the grievance process afforded all state education employees. Phillips v. Webster County Bd. of Educ., Docket No. 93–51–073 (May 27, 1993), aff'd, Circuit Court of Kanawha County, Civil Action No. 93–AA–155 (Mar. 17, 1994). In making that determination, the Administrative Law Judge stated:

Neither is the source of funding controlling herein. This situation is comparable to positions which are federally-funded but are within the daily control of the Board. Even though funding emanates from a source outside the state and the positions exist on a contingent basis pending continued funding, the employees are for all intents and purposes employees of the Board.

Id.

The evidence presented in the instant case with regard to the motion to dismiss indicates that, while the employees of the project are paid through the Board treasurer's office, the Board is not involved with any of the paperwork required by the project. The positions are 12–month, 10 hours per week, and take

place after regular school hours. The individuals employed are under the control of the Management Team, which is in biweekly contact with the Federal representative of the grant. The locations of the project, the community centers, are not owned or operated by the Board. No data was presented regarding who had evaluation or firing authority over the employees, but it is clear that the employees' work will be directed by the Management Team and the Federal representative of the project.

In contrast with the Phillips decision, where no evidence was presented that the funding partner, the Benedum Foundation, retained any day-to-day control over the position at issue or the program, the evidence in this case demonstrates just the opposite: that the Management Team is responsible for the day-to-day operations of the West Virginia Dreams project, and the Board has little input other than the posting and hiring function.

Therefore, based upon the evidence presented, the undersigned finds that the position of Site Coordinator is not a regular position with the Board; and thus, any challenges regarding the hiring for the position are outside the jurisdiction of this Grievance Board, and not applicable to the provisions of W. Va.Code [chs.] 18 and 18A.

6. Section 18–29–7 provides, in relevant part, that

either party may appeal to the circuit court of the county in which the grievance occurred on the grounds that the hearing examiner's decision (1) was contrary to law or lawfully adopted rule, regulation or written policy of the chief administrator or governing board, (2) exceeded the hearing examiner's statutory authority, (3) was the result of fraud or deceit, (4) was clearly wrong in view of the reliable, probative and substantial evidence on the whole record, or (5) was arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

tive Procedures Act, that "we give no deference to the lower court [but] review *de novo* whether the agency action satisfies the standards of the APA.") (internal quotation marks and citations omitted). Thus,

> [w]e must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. . . . Nonetheless, this Court must determine whether the ALJ's findings were reasoned, i.e., whether he or she considered the relevant factors and explained the facts and policy concerns on which he or she relied, and whether those facts have some basis in the record. We review *de novo* the conclusions of law and application of law to the facts.

*Martin,* 195 W.Va. at 304, 465 S.E.2d at 406; *see also* syl. pt. 1, *Randolph County Bd. of Educ. v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989) ("A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W. Va.Code, 18–29–1, *et seq.* (1985), and based upon findings of fact, should not be reversed unless clearly wrong.").

## III.

## DISCUSSION

The jurisdiction of the Grievance Board extends to, among other things,[7] adjudication of Level IV grievances filed by state and local educational employees, W. Va.Code § 18–29–4(d) (1995), with a "grievance" being defined, in part, as "any claim by one or more affected employees of the governing boards of higher education, state board of education, county boards of education, regional educational service agencies and multi-county vocational centers alleging a violation, a misapplication or a misinterpretation of the statutes, policies, rules, regulations or written agreements under which such employees work . . . ." W. Va.Code § 18–29–2(a) (1992). Thus, as both the ALJ and circuit court correctly surmised, Ms. Napier's claim is cognizable under the grievance procedures set forth in W. Va.Code §§ 18–29–1 to –11 only to the extent that the Board of Edu-

cation is the employer with respect to the sought-after position. *See Vest v. Board of Educ. of County of Nicholas,* 193 W.Va. 222, 225, 455 S.E.2d 781, 784 (1995) ("[T]he Grievance Board's authority extends only to resolving grievances made cognizable by its authorizing legislation, that is, those grievances recognized in W. Va.Code, 18–29–2."); *accord Skaff v. Pridemore,* 200 W.Va. 700, 709, 490 S.E.2d 787, 796 (1997) (per curiam).

In this case, the ALJ found as a matter of fact that the power of control resided in the Management Team of the West Virginia Dreams program, and accordingly concluded that West Virginia Dreams, rather than the Board of Education, was the employer. We do not discern any fundamental infirmity in the ALJ's finding that the program is controlled by the Management Team. As we explain below, however, the Court concludes that the ALJ erred as a matter of law in failing to properly extend her analysis to ascertain whether West Virginia Dreams, as the entity nominally controlling the employment position at issue, could properly be deemed to stand independent of the Board of Education.

In support of the conclusions below, the Board of Education posits that the West Virginia Dreams program is an entity with independent legal status, and that it was the lone employer of persons hired pursuant to the federal grant. The Board points to language in the Learning Centers Act indicating Congress' intent that recipient schools should

> collaborate with other public and nonprofit agencies and organizations, local businesses, educational entities . . . , recreational, cultural, and other community and human service entities, for the purpose of meeting the needs of, and expanding the opportunities available to, the residents of the communities served by such schools.

20 U.S.C. § 8242(2). The Board also cites to 20 U.S.C. § 8246(2), which, in part, defines a community learning center as an entity that "is operated by a local educational agency *in conjunction with* local governmental agencies, businesses, vocational education pro-

---

7. The Grievance Board's powers and responsibilities also extends to grievances filed by state employees generally. *See* W. Va.Code §§ 29–6A–1 to –12.

grams, institutions of higher education, community colleges, and cultural, recreational, and other community and human service entities." (Emphasis added.) Relying on this authority, as well as the fact that the original grant application submitted to the U.S. Department of Education referenced Step By Step's anticipated participation in the program, the Board of Education asserts that both it and Step By Step have formed a legally-distinct entity in conformity with the dictates of the Learning Centers Act.

We do not read the Learning Centers Act as either mandating or necessarily encouraging the formation of a separate legal entity for purposes of administering related grants. Indeed, the only entities that are permitted to apply for grants under the Act are "rural and inner-city public elementary or secondary schools, or consortia of such schools...." 20 U.S.C. § 8243(a). The sole grant applicant and recipient in this case was, in accordance with this mandate, the Board of Education. Rather than requiring the formation of a legally distinct organization, we read the Learning Centers Act as merely encouraging local educational agencies to leverage their own resources, as well as funds provided pursuant to the Act, by cooperating with other public, non-profit, and business organizations. Thus, we reject the Board of Education's argument that the Learning Centers Act must somehow be read as giving the West Virginia Dreams program independent legal status.

Nor have we been pointed to any authority supporting the proposition that a county board of education has the power under West Virginia law to form such an entity in affiliation with another organization. While we are not directly called upon to decide the question, there seems little doubt that the Board of Education has authority in this case to directly implement most, if not all, of the activities contemplated by the federal grant. See, e.g., W. Va.Code § 18–2–25 (1967) (granting county school boards power to control and supervise extracurricular activities); W. Va.Code § 18–5–19 (1996) (authorizing school boards to establish and maintain evening classes or night schools, and to permit use of school property for public meetings); W. Va.Code § 18–5–19b (1986) (empowering

school boards to provide adult education classes); W. Va.Code § 18–5–26 (1988) (permitting establishment of day care facilities, either directly or through engagement of independent contractors). Yet, nowhere have we found direct or implied authority permitting a county board of education to form, either by itself or in conjunction with others, a separate organization having the power to independently employ and manage persons without regard to the statutory protections generally afforded school board employees. Indeed, the Legislature has made clear that the grievance process should apply broadly not only to the enumerated educational entities, but also their agents: "The purpose of [the grievance process] is to provide a procedure for employees of the ... county boards of education ... and their employer *or agents of the employer* to reach solutions to problems which arise between them within the scope of their respective employment relationships to the end that good morale may be maintained, effective job performance may be enhanced and the citizens of the community may be better served." W. Va.Code § 18–29–1 (1992) (emphasis added).

■■■ As we have frequently stated, " '[t]he Board of Education of a school-district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by the statute.' " Syl. pt. 7, *City of Huntington v. Bacon*, 196 W.Va. 457, 473 S.E.2d 743 (1996) (quoting syl. pt. 4, *Shinn v. Board of Educ.*, 39 W.Va. 497, 20 S.E. 604 (1894)); *see also Bailey v. Truby*, 174 W.Va. 8, 15, 321 S.E.2d 302, 309 (1984); syl. pt. 1, *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975); *Board of Educ. of Raleigh County v. Commercial Cas. Ins. Co.*, 116 W.Va. 503, 506, 182 S.E. 87, 89 (1935); *Herald v. Board of Educ.*, 65 W.Va. 765, 65 S.E. 102 (1909); syl. pt. 1, *Honaker v. Board of Educ. of Pocatalico Dist.*, 42 W.Va. 170, 24 S.E. 544 (1896). We therefore hold that in the absence of express statutory authority to the contrary, county boards of education have no power to create separate and legally distinct organiza-

tions that are otherwise immune from the grievance procedures set forth in W. Va.Code §§ 18–29–1 to –11. Consequently, given the lack of such enabling legislation bearing upon the present case, there is no legal basis upon which to conclude that the West Virginia Dreams program, or its Management Team, has independent legal status so as to be insulated from the statutory grievance process.

Moreover, it is clear that West Virginia Dreams is, for all intents and purposes, controlled by the Board of Education. As the sole grant recipient, the Board of Education has full command over the use of the federal grant funds, subject only to the requirements of the Learning Centers Act and the terms of its grant. The ALJ effectively recognized this fact by noting that employees of the program are paid directly by the Board of Education. While we have recognized that a board of education does not necessarily become an employer by merely serving as a fiscal agent for another entity, *see e.g., Parker v. Summers County Bd. of Educ.*, 185 W.Va. 313, 406 S.E.2d 744 (1991) (per curiam), the Board of Education's involvement in the present case plainly went beyond serving as a fiscal agent. The Board retained the final say in all matters related to the project, a power which it displayed by making the final employment decision with regard to the position at issue in this case. Also, contrary to the finding of the ALJ, at least three of the five community learning centers established under the program are obviously located on school property.[8] And most importantly, the record is equally clear that at least a majority of the Management Team is composed of employees of the Board of Education.[9] While the grant application indicat-

ed that the Board of Education would collaborate with Step By Step, the Board has not cited any credible authority suggesting that it is in any way obligated to give that organization any measure of control over the overall program. Thus, there is no basis upon which to treat West Virginia Dreams, or its Management Team, as standing apart to any material degree from the Board of Education.

■ Consequently, the Court finds that the circuit court erred in upholding the ALJ's conclusion that the Board of Education was not the employer in this case, as the ALJ's decision was incorrect as a matter of law. Ms. Napier should therefore be permitted to have her claim addressed through the grievance process set forth in W. Va. Code §§ 18–29–1 to –11.

The result we reach here should not be taken, however, as precluding the Board of Education from collaborating with, accepting resources from, or otherwise relying upon the expertise of Step By Step in support of the West Virginia Dreams program, as the grant provided under the Learning Centers Act clearly contemplates. Yet, while Step By Step may contribute its own employees to the program without subjecting itself to the statutory grievance process, it is equally true that the Board of Education may not shield itself from such a requirement by forming a nominally separate, but nonetheless subordinate, organization.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Lincoln County is re-

---

**8.** The community learning centers located at the Atenville and Ferrellsburg Elementary Schools and at Harts High School are situated on Board of Education property. The status of the Big Ugly and Midkiff Community Centers is less certain, although we note that the Learning Centers Act expressly requires that community learning centers be established "within a public elementary or secondary school building." 20 U.S.C. § 8246. We are disposed to assume that the Board of Education has conformed to this legislative requirement.

**9.** In its grant application, the Board of Education indicated that the management team would be composed of "the principals or directors of each school/center" hosting a community learning center. As we have already observed, federal law plainly requires that a community learning center be located *within* a public elementary or secondary school building. *See* note 8, *supra.* We therefore surmise that federal authorities must have assumed, based upon these facts, that the Board of Education's grant would be managed exclusively by employees of the Board.

versed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.