IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

_____

No. 22-0234
_____

**FILED**

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

THE BOARD OF EDUCATION OF
THE COUNTY OF WYOMING,
Petitioner Below,
Petitioner,

v.

MARY DAWSON,
Respondent Below,
Respondent.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Carrie L. Webster, Judge
Civil Action Number: 18-AA-246

REVERSED AND REMANDED
WITH INSTRUCTIONS

_____

Submitted: September 27, 2023
Filed: November 8, 2023

Joshua A. Cottle, Esquire
Francesca C. Rollo, Esquire
Leigh Anne Wilson, Esquire
Bowles Rice LLP
Charleston, West Virginia
Counsel for Petitioner

Rebecca A. Roush, Esquire
WV School Service Personnel Association
Charleston, West Virginia
Counsel for Respondent

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE WOOTON concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "The Board of Education of a school-district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by the statute."  Syllabus Point 2, *Napier v. Lincoln County Board of Education*, 209 W. Va. 719, 551 S.E.2d 362 (2001).

2.      "A state or one of its political subdivisions is not bound by the legally unauthorized acts of its officers and all persons must take note of the legal limitations upon their power and authority."  Syllabus Point 3, *Freeman v. Poling*, 175 W. Va. 814, 338 S.E.2d 415 (1985).

i

**Armstead, Justice:**

The Board of Education of the County of Wyoming ("Petitioner") appeals the order of the Circuit Court of Kanawha County affirming The West Virginia Public Employees Grievance Board's ("grievance board") decision granting Mary Dawson's ("Respondent") grievance, reinstating her to a modified bus run, an extracurricular bus run, and awarding her back pay. Though Petitioner raises three assignments of error, those three issues can be condensed into two: First, that the circuit court erred by holding that Petitioner failed to prove it committed a legal mistake in the original modification of Respondent's regular bus run. Second, Petitioner asserts that the circuit court erred in holding that Petitioner was bound by an *ultra vires* act and legal mistake made by one of its employees and that Petitioner was not permitted to correct it.

Having considered the record on appeal, the briefs[1] and arguments of the parties, and the applicable legal authority, we find that the circuit court erred in affirming the grievance board and we reverse both the circuit court and the grievance board and remand for entry of an order denying the grievance.

---

[1] On April 5, 2023, this Court issued an order stating that "[R]espondent's brief does not comply with Rule 10 of the Rules of Appellate Procedure. Counsel is directed to file a [R]espondent's brief that fully complies with Rule 10 of the Rules of Appellate Procedure on or before May 1, 2023." The initial Respondent's brief contained no statement of facts or any citations to the appendix record in support of its contentions. Although Respondent's response to this Court's April 5, 2023, order, contained a procedural history and statement of facts, it was still devoid of any citations to the record.

1

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Respondent has been employed as a bus driver for Petitioner since 1980.[2]  At that time, when she bid on the bus driver position, Respondent was hired to transport both elementary and high school students on the same bus run at the same time ("regular run"). In 1983, Respondent entered into a continuing contract with Petitioner for her regular run.[3] In 1985, Respondent bid on a vocational bus run ("vocational run") that she began, effective October 15, 1985.[4]  At the time Respondent began the vocational run, it did not conflict with her regular run.

---

[2]  Throughout this opinion, unless otherwise indicated, we cite to the statutory version in effect when the matters relevant to this appeal transpired.  Petitioner should have applied the statutes in effect at that time.

[3]  Continuing contracts are contemplated by West Virginia Code § 18A-2-6:

> After three years of acceptable employment, each service personnel employee who enters into a new contract of employment with the board shall be granted continuing contract status.  The continuing contract of any such employee shall remain in full force and effect *except as modified by mutual consent of the school board and the employee*, unless and until terminated with written notice, stating cause or causes, to the employee, by a majority vote of the full membership of the board before the first day of April of the then current year….

W. Va. Code § 18A-2-6 (1981) (emphasis added).  As discussed below, the Petitioner school board never consented to the modification of Respondent's regular run.

[4] The vocational run was an "extracurricular assignment."  "All school service personnel assignments shall be considered extracurricular assignments, except such

(continued . . .)

2

In 1987 or 1988, school start times changed, and high school students were no longer transported at the same time as elementary school students on Respondent's regular run. As a result of the start time change, Respondent's regular run required her to pick up high school students and drop them off at their school, then pick up elementary students and drop them off at their school. This caused an overlap between Respondent's regular run and the vocational run, making it impossible for her to do both. Because of this overlap, an unknown employee of the Petitioner's administrative office modified Respondent's regular run, removed the morning elementary portion, and allowed her to continue to transport students on the vocational run. Another driver was assigned to transport the elementary students on their morning run. This modification of Respondent's regular run was made without approval of Petitioner, as no Board minutes reflect ratification of this personnel action and the modified regular run was never placed out to bid.

For the next thirty years, Respondent continued to make the modified regular run and the vocational run. In March 2017, Petitioner informed Respondent that the vocational run was being eliminated "due to changes in enrollment" and Petitioner eliminated all existing vocational runs, rebidding them with new terms, for the 2017-2018

---

assignments as are considered either regular positions . . . or extra-duty positions…." W. Va. Code § 18A-4-16 (2021) (references to other code sections omitted).

school year. As the bidding process unfolded, another unnamed employee asked for an arrangement like that of Respondent, pointing out that a portion of Respondent's route had been driven by another driver for years, allowing Respondent to drive the modified regular run and the vocational run.

This prompted an investigation by Jeffrey Hylton, Petitioner's Director of Safety and Transportation. He researched Petitioner's minutes back to 1985 and found Board approval for Respondent to drive the vocational run, effective October 15, 1985; however, he found no record of Petitioner approving the modified run or posting a new position for the modified run. In sum, there was no evidence offered showing Petitioner's approval of the modifications made to Respondent's regular run to allow her to drive the vocational run. When the 2017-2018 school year started, the investigation had not been completed and the vocational run had not been filled. Thus, Respondent was assigned the vocational run to begin the school year. She drove the vocational run until September 8, 2017, when Petitioner concluded that the modification of Respondent's regular run was a mistake which was not authorized by the Board and her employment was changed back to the arrangement originally contracted for, namely, transporting both elementary and high school students to and from their respective schools. Though Respondent bid on the vocational run, it was awarded to a less senior bus operator because Respondent's regular run conflicted with the vocational run.

Respondent then filed a grievance, pursuant to the provisions of West Virginia Code § 6C-2-3 (2008).[5] During that proceeding, the burden of proof was on Respondent.[6] At level one, the grievance was denied and the level two mediation was unsuccessful.[7] The grievance then proceeded to a full level three hearing on May 14, 2018.[8] At that hearing, Respondent argued that Petitioner violated numerous statutes in making the bus route change in 2017 and in awarding the vocational run to a less senior employee. Petitioner countered that the administrative assignment of the elementary portion of Respondent's regular run to another driver was an unauthorized mistake that had to be corrected when the mistake was discovered. In sum, Respondent's entire case hinges on whether or not Respondent's regular run was legally modified in 1987 or 1988. The grievance board granted the grievance, finding that Petitioner's action in restoring

---

[5] This statute was amended in 2023. We cite to the statute in effect when this grievance was filed.

[6] "The grievant bears the burden of proving the grievant's case by a preponderance of the evidence, except in disciplinary matters, where the burden is on the employer to prove that the action taken was justified." W. Va. C. S. R. § 156-1-3 (2008).

[7] The grievance procedure is generally described in West Virginia Code § 6C-2-4 (2008). This statute was also amended in 2023 and we cite to the provision in effect when this grievance was filed.

[8] The circuit court found that no written contracts were presented as evidence at the Level Three hearing in this matter. Further, Respondent was the only witness who testified on her behalf at the Level Three hearing. She did not call anyone who allegedly approved the modification of her regular run and she failed to identify that person. She offered no job posting or bids reflecting the validity of the modified run. Finally, no Board minutes were introduced demonstrating Board approval of the modification.

5

Respondent's regular bus run to its original parameters was unreasonable, arbitrary, and capricious. Additionally, the grievance board found:

> The decision to assign another bus operator to drive only the morning elementary portion of [Respondent's] original bus run was made in or about 1987 or 1988. There is, apparently, no written record of the board approving this decision or the decision not to post that one fraction of [Respondent's] morning bus run as a separate position. This does not necessarily mean that there was no approval. Given that all of this was done about thirty years ago, and the person or persons who made the decision are not around, there is simply no way to tell what they did or did not do, or how they came to their decision. For all we know, the superintendent got approval from the board and it was not put in writing or included in any meeting minutes. In the end, [Respondent] did as she was told by the administration, as did the other bus operator(s) who drove the elementary portion of [Respondent's] morning run, and made her regular run and the vocational run as directed for about thirty years, throughout numerous administrations and board configurations. She was not hiding what she was doing. She turned in her time sheets, was assigned the same runs every year, and obviously did a good job. The absence of written documentation alone does not make what occurred thirty years ago a mistake.
>
> . . . .
>
> Again, the general notion that [Petitioner] should be encouraged to correct mistakes does not absolve [Petitioner from] liability for the violation of statute, [Respondent] proved by a preponderance of the evidence her claims that [Petitioner] violated West Virginia Code §§ 18A-4-8a(j), 18A-4-8(m); and 18A-4-16(6). Accordingly, the grievance is granted.

The circuit court affirmed the grievance board. In its findings, the circuit court stated:

> The Decision of the [grievance board] was properly made upon the evidence presented. Petitioner simply failed to meet its burden of proof to establish the affirmative defense of

6

"mistake." Petitioner's appeal rests entirely on its contention that the change made to [Respondent's] regular bus run was significant enough to require Petitioner's approval. However, Petitioner failed to demonstrate that the change was, in fact, significant. The uncontroverted facts of the case indicate the contrary (i.e., that the change was insignificant). Indeed, the change was so slight that it garnered no attention for three decades. Then, it only drew attention when another employee sought a "deal" like that given to [Respondent] long ago. No evidence of any "deal" was presented to the [grievance board]. [Petitioner] asserted, but failed to prove, that a change to [Respondent's] regular bus run in 1987 or 1988 was a mistake.

The uncontroverted facts are that [Respondent] transported students for [Petitioner] as part of both her regular and vocational bus runs for more than thirty-one (31) years and that she was the most senior bus operator in the county. In reaching [its] Decision, the [grievance board] properly found that [Respondent] had been performing both the regular and vocations bus runs for thirty-one years, and that [Petitioner] had no legal right to suddenly change [Respondent's] schedule in 2017 without her consent and to strip her of the vocational bus run she had held for thirty-one (31) years. The [grievance board] properly found that [Petitioner's] action in doing so was unreasonable, arbitrary and capricious.

Petitioner now appeals the circuit court's order affirming the grievance board.

## II.  STANDARD OF REVIEW

It is well established that, "[w]hen reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. pt. 1, *Martin v. Barbour Cnty. Bd. of Educ.*, 228 W. Va. 238, 719 S.E.2d 406 (2011). The standard to be applied by the circuit court, which, by extension, also is applied by this Court, is set out in West Virginia Code section 6C-2-5 as follows:

7

(b) A party may appeal the decision of the administrative law judge on the grounds that the decision:
(1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
(2) Exceeds the administrative law judge's statutory authority;
(3) Is the result of fraud or deceit;
(4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 6C-2-5(b) (eff. 2007).

*Webster Cnty. Bd. of Educ. v. Davis*, 244 W. Va. 702, 709, 856 S.E.2d 661, 668 (2021).

## III. ANALYSIS

In its decision, the grievance board found that Petitioner could not correct a mistake or the *ultra vires* act of one of its employees if such correction would violate the terms of West Virginia Code §§ 18A-4-8(m) (2023), 18A-4-8a(j) (2023), and 18A-4-16(6) (2023).[9] West Virginia Code § 18A-4-8(m) prohibits the reclassification or relegation of any service personnel, without their consent, providing:

(m) Without his or her written consent, a service person may not be:
(1) Reclassified by class title; or
(2) Relegated to any condition of employment which would result in a reduction of his or her salary, rate of pay, compensation or benefits earned during the current fiscal year; or for which he or she would qualify by continuing in the same job position and classification held during that fiscal year and subsequent years.

---

[9] These three sections of the West Virginia Code have been amended since the grievance was filed but those amendments did not make any changes to these subsections.

8

W. Va. Code § 18A-4-8(m)(1 & 2). West Virginia Code 18A-4-8a(j) prohibits changing a service person's daily work schedule during the school year without the employee's consent:

> (j) A service person may not have his or her daily work schedule changed during the school year without the employee's written consent and the person's required daily work hours may not be changed to prevent the payment of time and one-half wages or the employment of another employee.

Finally, West Virginia Code § 18A-4-16(6) gives an option to school service personnel to retain an extracurricular assignment if such assignment exists in the following school year:

> (6) An employee who was employed in any service personnel extracurricular assignment during the previous school year shall have the option of retaining the assignment if it continues to exist in any succeeding school year. A county board of education may terminate any school service personnel extracurricular assignment for lack of need pursuant to section seven, article two of this chapter. If an extracurricular contract has been terminated and is reestablished in any succeeding school year, it shall be offered to the employee who held the assignment at the time of its termination. If the employee declines the assignment, the extracurricular assignment shall be posted and filled pursuant to section eight-b of this article.

These three code sections place certain rights and obligations upon school service personnel and school boards when a valid contract exists. In this case, there was no record of any action taken by Petitioner to lawfully modify Respondent's regular run, as required by other statutes. First, for the modified run to have been lawfully established, Petitioner would have had to post and received bids:

9

Boards shall be required to post and date notices of all job vacancies of established existing or newly created positions in conspicuous working places for all service employees to observe for at least five working days. The notice of such job vacancies shall include the job description, the period of employment, the amount of pay and any benefits and other information that is helpful to the employees to understand the particulars of the job.

W. Va. Code Ann. § 18A-4-8b (1983). Thus, absent a proper job posting for a new position and Petitioner's approval of the employee contract as "a matter of the Board's minute records," W. Va. Code § 18A-2-5 (1983), there was no valid contract for the modified bus run. Because the modified route was never approved by Petitioner, it was an illegal change in Respondent's job duties and amounted to an *ultra vires* act by one of Petitioner's employees. *See* W. Va. Code § 18A-2-6 (1981). Such acts have long been found to be nonbinding. "[U]nlawful or *ultra vires* promises are nonbinding when made by public officials, their predecessors or subordinates, when functioning in their governmental capacity." *Parker v. Summers Cnty. Bd. of Educ.*, 185 W. Va. 313, 317, 406 S.E.2d 744, 748 (1991). We have further held:

The Board of Education of a school-district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by the statute.

Syl. Pt. 2, *Napier v. Lincoln Cnty. Bd. of Educ.*, 209 W. Va. 719, 551 S.E.2d 362 (2001). Thus, the unauthorized act of Petitioner's employee does not have binding effect. Indeed, "[a] state or one of its political subdivisions is not bound by the legally unauthorized acts

of its officers and all persons must take note of the legal limitations upon their power and authority." Syl. Pt. 3, *Freeman v. Poling*, 175 W. Va. 814, 338 S.E.2d 415 (1985) (citations omitted).

In *Freeman*, following an election for Sheriff of Barbour County, the outgoing Sheriff made representations that certain employees' jobs would be protected "under the new civil service system as long as they passed the civil service examination." *Id.*, 175 W. Va. at 816, 338 S.E.2d at 417. This Court found that, regardless of what the outgoing Sheriff told these certain employees, unless "proper procedures [were] followed" the statutes that established civil service protection did not apply. *Id.*, 175 W. Va. at 818, 338 S.E.2d at 419.

Similarly, in *Parker v. Summers Cnty. Bd. of Educ.*, 185 W. Va. 313, 406 S.E.2d 744 (1991), the issue was whether the Summers County Board of Education had promised to award sick leave to Parker for work completed prior to her employment by the Board. *Id.*, 185 W. Va. at 316, 406 S.E.2d at 747. This Court concluded, citing favorably to *Freeman*, that the promises of Board employees to grant sick leave to Parker were *ultra vires* acts that did not bind the Board. *Id.*, W. Va. at 317, 406 S.E.2d at 748.

Further, West Virginia school service personnel have long been required to execute written agreements for their employment. At the time Respondent began her regular run for Petitioner, this requirement provided "[b]efore entering upon their duties

11

such personnel shall execute with the board a written contract which may be in letter form and shall state the classification and terms of work, the employment period and pay, *and shall certify that said employment has been made a matter of minute record*." W. Va. Code § 18A-2-5 (1969). By 1983, when Respondent was granted a continuing contract, this Code section had been significantly amended to include an entire form contract to be used by county boards of education for employment of school service personnel. W. Va. Code § 18A-2-5 (1983). This form required Petitioner and Respondent to execute a written contract setting forth numerous terms, including the job classification, place of assignment, and salary of Respondent. W. Va. Code § 18A-2-5 (1983). Additionally, when Respondent's continuing contract began, the statutory form contained language stating: "[t]he Board hereby certifies that the Employee's employment has been duly approved by the Board *and will be a matter of the Board's minute records*." *Id.* (emphasis added). It is undisputed that in 1983, Respondent received a continuing contract for her regular run. In 1985, she began picking up and dropping off pupils on the vocational run, which was memorialized in Petitioner's minutes. However, after the change in school start times caused an overlap between her regular run and the vocational run, there was never an entry in Petitioner's minutes, as required by law, showing approval of any modification to Respondent's regular run. Therefore, Respondent did not prove that Petitioner authorized the changes to Respondent's regular run.

The evidence before the grievance board proved that the modification of Respondent's regular run was done without Petitioner's approval. The evidence adduced

12

at the grievance board proved Respondent was hired to transport elementary and high school students to and from their respective schools on her regular run. She further demonstrated that her regular run was properly bid and she was awarded that position. However, there was never any bid on the modified run and the board never approved the modified run.

More importantly, Respondent failed to prove that her regular run was legally modified. *See* W. Va. Code §§ 18A-4-8b and 18A-2-6. The burden of proof to demonstrate this modification was on Respondent. *See* W. Va. C. S. R. § 156-1-3 (2008). *See also Staats v. Jackson Cnty. Bd. of Educ.*, No. 15-0227, 2015 WL 6181438, at *5 (W. Va. Oct. 20, 2015) (memorandum decision) ("As this grievance does not involve a disciplinary matter, Grievant has the burden of proving [her] grievance by a preponderance of the evidence."). Indeed, the evidence showed that proper procedures were not followed in modifying Respondent's regular run. Respondent testified that she did not remember the name of the person who allegedly consented to the modification. No person who allegedly consented to the modification testified. No notice of a modified run was properly posted and no bids were received for that modified run. Respondent offered no Board meeting minutes, which are required by law to approve personnel decisions. She produced no contract. Thus, the modified run was unauthorized and illegal from its inception.[10]

---

[10] We have previously held that:

(continued . . .)

The circuit court compounded the grievance board's error by acknowledging that while a change in the routes was made, such change was insignificant and Petitioner could not correct it:

> Petitioner simply failed to meet its burden of proof to establish the affirmative defense of "mistake." Petitioner's appeal rests entirely on its contention that the change made to [Respondent's] regular bus run was significant enough to require Petitioner's approval. However, Petitioner failed to demonstrate that the change was, in fact, significant.

Contrary to the circuit court's finding, it is clear that Petitioner had to correct its legal mistake. *See Freeman* 175 W. Va. at 818, 338 S.E.2d at 419. Plainly, the modified run was not lawfully created by Petitioner because it was not made a part of its minute record. *See* W. Va. Code § 18A-2-5 (1969) and (1983). Because the modified run was not properly created, Petitioner had to correct the error because to do otherwise would discriminate against Petitioner's other employees. *See* W. Va. Code § 18A-4-5b (1990) ("[U]niformity shall apply to all salaries, rates of pay, benefits, increments or compensation for all persons regularly employed and performing like assignments and duties within the county. . . .").

> [T]his Court [has] examined the extent to which jobs duties must resemble one another in order to necessitate identical benefits or treatment under the uniformity statute. This Court

---

> A purported teaching contract entered into between a Board of Education and a teacher, in direct contravention of the prohibitive provisions of a valid statute, is void *ab inito*, and cannot be subsequently validated by ratification, nor can execution thereof be made the basis of an equitable estoppel.

Syl. Pt. 2, *Cochran v. Trussler*, 141 W. Va. 130, 89 S.E.2d 306 (1955).

reasoned that "once a county board of education pays additional compensation to certain teachers, it must pay the same amount of additional compensation to other teachers performing 'like assignments and duties[.]'

*Bd. of Educ. of Cnty. of Wood v. Airhart*, 212 W. Va. 175, 181, 569 S.E.2d 422, 428 (2002) *quoting Weimer-Godwin v. Board of Educ. of Upshur County*, 179 W.Va. 423, 427, 369 S.E.2d 726, 730 (1988). Allowing Respondent to continue to receive full pay for her regular run, when her duties were reduced by 25%, violated the uniformity provisions of West Virginia Code § 18A-2-5. Indeed, the circuit court's finding that the modified bus run was not a "significant mistake" was plainly wrong. Once Petitioner properly restored Respondent to her regular run, there was now a time conflict between her regular run and the vocational run. The Grievance Board has held that:

> Extracurricular assignments must be made on the basis of seniority, qualifications and evaluation of past service; however, in order for an employee to be qualified for such an assignment it must not interfere with either his regular duties or any other extracurricular, extra-duty or supplement assignments which he holds.

*Bowman v. Marion Cnty. Bd. of Educ.*, W. Va. St. Emp. Griev. Bd., Docket No. 91-24-343 (Feb. 27, 1992).

Both the grievance board and the circuit court were clearly wrong in their determinations. As such, we find that the circuit court should have reversed the grievance board, found that Respondent did not meet her burden of proof, and ordered dismissal of the grievance.

15

## IV. CONCLUSION

For the foregoing reasons, we reverse the March 4, 2022, order of the Circuit Court of Kanawha County and direct the circuit court order the West Virginia Public Employees Grievance Board to deny the grievance.

Reversed and Remanded with Instructions.